NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Chief, Public Corruption & Civil Rights Section
VERONICA DRAGALIN (Cal. Bar No. 281370)
MELISSA MILLS (Cal. Bar No. 248529)
Assistant United States Attorneys
Public Corruption & Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2091
     Facsimile: (213) 894-2927
     Email:    mack.jenkins@usdoj.gov
               veronica.dragalin@usdoj.gov
               melissa.mills@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-35-JFW |
|---|---|
| Plaintiff, | GOVERNMENT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT FOR DEFENDANT MITCHELL ENGLANDER; EXHIBIT |
| v. | |
| MITCHELL ENGLANDER, | Hearing Date: January 25, 2021 |
| Defendant. | Hearing Time: 8:00 a.m. |
| | Location:    Courtroom of the Hon. John F. Walter |

     Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Mack E. Jenkins,

Veronica Dragalin, and Melissa Mills, hereby files its Objections to

the Presentence Investigation Report for Defendant Mitchell Englander

in the above-captioned case.

The government's objection is based upon the attached memorandum of points and authorities and exhibit, the files and records in this case, the Presentence Investigation Report, the Recommendation Letter, and such further evidence and argument as the Court may permit.

Dated: January 4, 2021          Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

MACK E. JENKINS
VERONICA DRAGALIN
MELISSA MILLS
Assistant United States Attorneys
Attorneys for Plaintiff
UNITED STATES OF AMERICA

## **Table of Contents**

I.   INTRODUCTION...................................................1

II.  THE PRESENTENCE INVESTIGATION REPORT..........................2

III. OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT.............3

        A.   The Obstruction Guideline § 2J1.2 Applies in this
            Case...................................................3

            1.   The Cross-Reference in § 2B1.1(c)(3)
                Requires the Application of § 2J1.2.............4

            2.   § 1B1.2(c) Also Triggers the Applicability
                of the Obstruction Guideline Because
                Defendant Admitted Facts that Establish an
                Additional Offense.............................9

            3.   The Extensive Scope Enhancement Applies.......13

        B.   The Abuse of Public Trust Enhancement Applies.......15

        C.   In the Alternative, the Total Offense Level Is 8....19

IV.  CONCLUSION..................................................22

# **Table of Authorities**

Page(s)

**Cases**

United States v. Bah,
    439 F.3d 423 (8th Cir. 2006)...................................4

United States v. Coumaris,
    198 F. App'x 9 (D.C. Cir. 2006)..........................16, 17

United States v. Dredd,
    No. 19-50220, 2020 WL 6281513 (9th Cir. Oct. 27, 2020)........19

United States v. Ebert,
    99 F.3d 448 (D.C. Cir. 1996)................................16

United States v. Farrell,
    126 F.3d 484 (3d Cir. 1997)..................................5

United States v. Genao,
    343 F.3d 578 (2nd Cir. 2003).................................4

United States v. Guadalupe,
    402 F.3d 409 (3d Cir. 2005)..................................5

United States v. Gutierrez-Sanchez,
    587 F.3d 904 (9th Cir. 2009).............................9, 10

United States v. Hawkins,
    185 F.Supp.3d 114 (D.D.C. 2016)..............................4

United States v. Jensen,
    248 F. App'x 849 (10th Cir. 2007)...........................13

United States v. Khatami,
    280 F.3d 907 (9th Cir. 2002).................................5

United States v. Kim,
    95 F. App'x 857 (9th Cir. 2004)..............................4

United States v. Ochoa,
    291 F. App'x 265 (11th Cir. 2008)............................4

United States v. Rodriguez,
    499 F. App'x 904 (11th Cir. 2012)...........................13

United States v. Saldana,
    12 F.3d 160 (9th Cir. 1993)..........................9, 10, 11

United States v. Tomaskovic,
        275 F. App'x 884 (11th Cir. 2008)..............................13

United States v. Wang,
        944 F.3d 1081 (9th Cir. 2019)..................................4

**Statutes**

8 U.S.C. § 1326.................................................10

18 U.S.C. § 1001...........................................passim

18 U.S.C. § 1001(a)(1)....................................3, 5, 9

18 U.S.C. § 1512.......................................2, 4, 5, 16

18 U.S.C. § 1512(b)(3)....................................passim

**Guidelines**

U.S.S.G. § 1B1.2................................................9

U.S.S.G. § 1B1.2(a)............................................9

U.S.S.G. § 1B1.2(c).......................................passim

U.S.S.G. § 2B1.1........................................1, 3, 17

U.S.S.G. § 2B1.1(c)(3)..................................2, 3, 4, 5

U.S.S.G. § 2J1.2(a)............................................3

U.S.S.G. § 2J1.2(b)(3)(C)..............................2, 3, 11, 17

U.S.S.G. § 3B1.3......................................3, 14, 17

U.S.S.G. § 3C1.1.....................................3, 17, 18, 19

U.S.S.G. § 3E1.1...............................................3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

The government objects to the Presentence Investigation Report ("PSR") for defendant Mitchell Englander ("defendant"), in which the United States Probation Office ("USPO"), contrary to controlling law and undisputed evidence, failed to apply the correct Guidelines section.[1]

On October 14, 2020, the government timely provided an 8-page memorandum and relevant targeted discovery, including reports of defendant's FBI interviews, source reporting, and transcripts of defendant's recorded obstruction efforts.  This memorandum set forth the government's analysis of the appropriate Guidelines, including

---

[1] The government also respectfully objects to the USPO's brief § 3553(a) analysis in the PSR Letter supporting its recommendation and the recommendation itself.  In the government's view, the PSR Letter does not address defendant's significant aggravating factors, either quantitatively or qualitatively, stemming from defendant's underlying corrupt conduct, his repeated lies to the federal government over a significant period of time, and his extensive efforts at obstruction, including while purporting to serve as a public official.  Instead, the PSR Letter's analysis appears to favor wealthy public officials in a way that would create significant and unwarranted sentencing disparities for defendants who do not have the same status as defendant and whose conduct does not approach the level of aggravating factors engaged in by defendant.  The letter also does not address the statutory need for general deterrence. This notable absence is of particular concern where the criminal conduct relates to a public official abusing his position and in a way that is exceedingly difficult to uncover (e.g., secretly taking thousands in cash in casino bathrooms from a businessperson seeking to curry political favor then later tampering with said businessperson in private meetings).  <u>See</u> <u>United States v. Brown</u>, 880 F.3d 399 (7th Cir. 2018) (District court did not err in relying on idea that white-collar criminals were prime candidates for general deterrence; district court was entitled to conclude that where there was a lower likelihood of getting caught, a serious penalty was necessary to ensure deterrence).  Since these are not objections to the Guidelines application, these arguments, and others, will be addressed in the government's sentencing memorandum due to be filed January 11, 2021.

Ninth Circuit case law support, and its view of the salient facts and their application to the Guidelines.

## II.   THE PRESENTENCE INVESTIGATION REPORT

On December 21, 2020, the USPO disclosed the PSR and its recommendation letter.  (CR 40.)  The USPO found that defendant's total offense level was 6, based on a base offense level of 6 under U.S.S.G. § 2B1.1, and no additional specific offense characteristics or adjustments.  Although the PSR acknowledges the cross-reference provision in § 2B1.1(c)(3), it summarily concludes "cross-referencing to another guideline is not necessary." (PSR ¶¶ 43, 44.)  The PSR also acknowledges that the Guidelines allow for the application of a different guidelines when the plea agreement establishes a more serious offense, but concludes – without any analysis and without any reference to the Ninth Circuit case law provided by the government - in a footnote that the plea agreement here does not contain "the requisite stipulation." (PSR at p. 10 fn. 1.)  The PSR also concludes that that there is "no information indicating the defendant impeded or obstructed justice." (PSR ¶ 38.)  This is plainly contradicted by the Indictment, discovery, and defendant's admission.  Defendant was expressly charged with several counts (3, 5, 6) of obstructing the investigation into his "making false statements, in violation of [18 U.S.C. 1001]," the statute to which he pled guilty, and the count of conviction expressly alleged that defendant carried out his "scheme to falsify and conceal material facts" by "conducting an obstruction and witness tampering campaign."  (Indictment at ¶¶ 8, 9, 19, 23, 24.)  Moreover, in the factual basis for that plea agreement, defendant admitted to facts proving that he obstructed, among other things, the § 1001 investigation into him.  (E.g., PSR ¶¶ 20-24, 26-

29, 31-32.)   The PSR also rejects the adjustments for abuse of a position of public trust and obstruction of justice without addressing the ways in which defendant's criminal conduct was enhanced by his position as a powerful City councilmember capable of affecting business in the City and required to make certain financial disclosures earmarked to unearth corruption.   (PSR ¶¶ 46-48.)

**III. OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

The government objects to the PSR's Guidelines calculations. Based on the offense of conviction and undisputed evidence, the total sentencing Guidelines offense level found by the government is 15. The government's calculations are as follows: (i) pursuant to U.S.S.G. § 2B1.1(c)(3), § 1B1.2(c), and § 2J1.2(a), the base offense level is 14 because the government alleged and defendant admitted the elements of a violation of 18 U.S.C. § 1512; (ii) pursuant to U.S.S.G. § 2J1.2(b)(3)(C), a +2 enhancement applies because defendant's obstructionist conduct was extensive in scope; (iii) pursuant to U.S.S.G. § 3B1.3, a +2 adjustment applies because defendant abused a position of public trust in a manner that significantly facilitated the commission and concealment of the offense; and (iv) pursuant to U.S.S.G. § 3E1.1, a -3 adjustment applies because defendant accepted responsibility for the offense. Alternatively, if the Court applies a base offense level of 6 under U.S.S.G. § 2B1.1, a +2 adjustment is warranted to account for defendant's admitted witness tampering/obstructionist conduct pursuant to U.S.S.G. § 3C1.1.

**A.   The Obstruction Guideline § 2J1.2 Applies in this Case**

Count One of the Indictment alleges that, in violation of 18 U.S.C. § 1001(a)(1), defendant knowingly and willfully carried out a

scheme to falsify and conceal material facts "by conducting an obstruction and witness tampering campaign." (CR 1 at ¶¶ 30-31.) Defendant pleaded guilty to Count One and admitted facts establishing that he engaged in obstruction and attempted witness tampering, meeting the elements of a violation of 18 U.S.C. § 1512(b)(3). Pursuant to U.S.S.G. § 2B1.1(c)(3), because the count of conviction establishes an obstruction of justice offense, the guidelines section for the more specific statute applies.  Alternatively, pursuant to U.S.S.G. § 1B1.2(c), defendant should be deemed to have been convicted of two offenses, falsifying material facts and obstruction of justice.  Therefore, the appropriate starting point for the guidelines calculation is U.S.S.G. § 2J1.2(a), level 14.  In addition, a +2 enhancement for a scheme "extensive in scope" is warranted under U.S.S.G. § 2J1.2(b)(3)(C).

### 1. The Cross-Reference in § 2B1.1(c)(3) Requires the Application of § 2J1.2

The applicable guideline is § 2J1.2.  The PSR incorrectly applied § 2B1.1, the general fraud guideline broadly covering a wide swath of offenses ranging from access device fraud to antitrust violations to arson.  Because the conduct set forth in the 18 U.S.C. § 1001 count of conviction establishes an offense that is specifically covered by another guideline —— namely, witness tampering —— the Court must apply § 2J1.2, which governs that offense.  U.S.S.G. § 2B1.1(c)(3).  The Sentencing Guidelines are unequivocal on this point and it would be plain error to follow the PSR's recommendation:

> If (A) [the offense did not involve firearms, destructive
> devices, or arson]; (B) the defendant was convicted under a
> statute proscribing false, fictitious, or fraudulent
> statements or representations generally (e.g., 18 U.S.C.

4

§ 1001, § 1341, § 1342, or § 1343); and (C) the conduct set
forth in the count of conviction establishes an offense
specifically covered by another guideline in Chapter Two
(Offense Conduct), apply that other guideline.

U.S.S.G. § 2B1.1(c)(3); see also United States v. Wang, 944 F.3d 1081

(9th Cir. 2019) (district court plainly erred in applying § 2B1.1

general fraud guideline rather than following cross-reference to visa

fraud guideline where the elements of the latter offense were alleged

and proven).[2]

        Here, the requirements of § 2B1.1(c)(3) are satisfied.

Defendant was convicted, pursuant to his plea, of a scheme to falsify

material facts under 18 U.S.C. § 1001(a)(1).  The language of the

count to which defendant pled guilty specifically alleges all of the

elements of witness tampering (18 U.S.C. § 1512), and the factual

basis to which defendant stipulated in his plea agreement clearly

establishes that he committed the offense of witness tampering. (See,

e.g., PSR ¶¶ 20-24, 26-29, 31-32.)  These facts trigger the cross-

reference provision of § 2B1.1(c)(3) and require the application of

§ 2J1.2.

---

[2] Some courts have held that the guideline for another offense
may only be cross-referenced under § 2B1.1(c)(3) where the government
has both 1) alleged all elements of the other offense in the charge
of conviction and 2) proved those elements by at least a
preponderance of the evidence.  See, e.g., United States v. Genao,
343 F.3d 578, 583 (2nd Cir. 2003); United States v. Bah, 439 F.3d
423, 427 (8th Cir. 2006) United States v. Kim, 95 F. App'x 857 (9th
Cir. 2004) (unpublished).  Others have disagreed, upholding the
application of a cross-referenced guideline section under
§ 2B1.1(c)(3) where the charging document did not specifically allege
every element of the other offense.  See, e.g., United States v.
Ochoa, 291 F. App'x 265, 268 (11th Cir. 2008) (unpublished); United
States v. Hawkins, 185 F.Supp.3d 114, 124 (D.D.C. 2016).  This issue
is irrelevant here because, as discussed herein, the elements of 18
U.S.C. § 1512 were plainly alleged in the count of conviction.

The elements of a violation of 18 U.S.C. § 1512(b)(3) are: "(1) the defendant attempted to corruptly persuade a person; (2) the defendant was motivated by a desire to prevent the communication between that person and law enforcement authorities concerning the commission or possible commission of an offense; (3) the offense was actually a federal offense; and (4) the defendant believed that the person he attempted to corruptly persuade might communicate with federal authorities." United States v. Guadalupe, 402 F.3d 409, 412 (3d Cir. 2005); see also United States v. Khatami, 280 F.3d 907, 914 (9th Cir. 2002) ("corruptly persuades" in 18 U.S.C. § 1512(b) includes "non-coercive attempts to persuade witnesses to lie to investigators"); United States v. Farrell, 126 F.3d 484, 488 (3d Cir. 1997) ("attempting to persuade someone to provide false information to federal investigators" constitutes "corrupt persuasion").

Count One, the count of conviction, alleges that defendant "knowingly and willfully falsified, concealed and covered up by trick, scheme, and device material facts," and that he carried out this scheme "by conducting an obstruction and witness tampering campaign."  (Indictment; CR 1 at ¶¶ 30-31.)  Count One alleges the elements of witness tampering in violation of 18 U.S.C. § 1512(b)(3):

(1)    "ENGLANDER had counseled Businessperson A to lie to and mislead the FBI and USAO" by repeatedly instructing Businessperson A to lie to and withhold information from the FBI (id. at ¶¶ 30(c), 31(i), 31(m), 31(o));

(2)    Defendant carried out his campaign of obstruction and witness tampering "[a]fter learning about the Federal Investigation" and was motivated by a desire to prevent Businessperson A from communicating information to the FBI

concerning the Federal Investigation, which would also
reveal that defendant had lied to federal investigators
(id. at ¶ 31(a), 31(i), 31(m), 31(o));

(3)   The Federal Investigation was a "federal criminal
investigation into public corruption throughout the City of
Los Angeles" and was "specifically investigating whether
Businessperson A had provided personal benefits to
defendant ENGLANDER, City Staffer A, Councilmember A, or
City Staffer B, and whether those public officials,
including defendant ENGLANDER, had accepted such personal
benefits" (id. at ¶¶ 1, 25); and these were all topics
defendant discussed over his three interviews with federal
investigators;

(4)   Defendant believed Businessperson A might communicate with
federal authorities, including on topics about which
defendant had lied to federal investigators, based on
defendant's knowledge "that Businessperson A had been
interviewed ... by the FBI" (id. at ¶ 31(c)), that
Businessperson A's "attorney got [a] call from FBI asking
to follow up" (id. at ¶ 31(e)), and repeatedly instructed
Businessperson A to provide false information to and
withhold information from the FBI in future interviews (id.
at ¶¶ 31(i), 31(m), 31(o)).

These allegations clearly satisfy the requirement in
§ 2B1.1(c)(3)(C) by setting forth in the count of conviction conduct

7

that establishes an offense specifically covered by another guideline — namely, witness tampering, which is covered by § 2J1.2.[3]

In addition to being alleged in the count of conviction, defendant's commission of the witness tampering offense is established in the factual basis to which he stipulated in his plea agreement. See CR 24, Factual Basis.

    (1)   Defendant admitted that he repeatedly attempted to corruptly persuade Businessperson A by encouraging him to lie to and withhold information from the FBI.  Id. at ¶ 8 ("ENGLANDER had counseled Businessperson A how to lie to and mislead the FBI and USAO"), ¶ 17 ("ENGLANDER told Businessperson A how to answer certain questions from the FBI"), ¶ 21 ("ENGLANDER told Businessperson A what questions the FBI would ask Businessperson A and how to answer them," "not to disclose their use of Confide," and "not to disclose their conversation at the fundraiser"), ¶ 23 ("ENGLANDER agreed that Businessperson A should omit that they talked about the content of their FBI interviews").

---

[33] The PSR acknowledged the potential applicability of § 2B1.1(c)(3) but summarily concluded, without analysis, that the cross-referencing provision was not triggered because defendant's conduct "does not seem analogous" to the exemplar statutes noted in the application note to the Guideline.  (PSR ¶¶ 43, 44.)  While witness tampering is not specifically enumerated in the small handful of examples offered in Application Note 17, that list of exemplar statutes does not purport to be exhaustive, nor has the Ninth Circuit construed it to be so.  See Wang, 944 F.3d at 1088 (district court plainly erred in applying § 2B1.1 rather than cross-referencing to the guideline for visa fraud); United States v. Velez, 113 F.3d 1035, 1038 (9th Cir. 1997) (district court erred in applying general fraud guideline rather than guideline governing false statements to immigration officials).

(2)   Defendant admitted that he was motivated by a desire to prevent the communication between Businessperson A and the FBI concerning the commission or possible commission of an offense.  Id. at ¶ 17 ("ENGLANDER told Businessperson A not to tell the FBI anything about Businessperson A providing escort services or 'massages ladies' to defendant ENGLANDER"); ¶ 21(d) ("ENGLANDER repeatedly told Businessperson A how to respond to FBI questions about the use of escorts during the June 2017 Las Vegas trip"); ¶ 24(d) (ENGLANDER "repeatedly agreed that Businessperson A should omit certain information").

(3)   Defendant admitted that there was a federal criminal investigation into public corruption and that he carried out his scheme "[a]fter learning about the Federal Investigation." Id. at ¶¶ 1, 9.

(4)   Defendant admitted that he believed Businessperson A might communicate with federal authorities on topics about which defendant had previously lied.  Id. ¶ 19(e) (defendant "told Businessperson A what questions to expect, what to say, and what not to say during upcoming FBI interviews").

Because the conduct set forth in the 18 U.S.C. § 1001 count of conviction establishes the offense of witness tampering, § 2J1.2 is the applicable guideline pursuant to § 2B1.1(c)(3).

2.   § 1B1.2(c) Also Triggers the Applicability of the Obstruction Guideline Because Defendant Admitted Facts that Establish an Additional Offense

Alternatively, if the Court applies § 2B1.1 to the 18 U.S.C. § 1001 count, defendant should be deemed to have been convicted of the additional, more serious crime of witness tampering in violation

of 18 U.S.C. § 1512(b)(3), alleged in Counts Three, Five, and Six. Whenever a defendant admits to the elements of an additional offense within the four corners of a plea agreement, he will be deemed to have been convicted of additional crimes.  U.S.S.G. § 1B1.2(c) ("A plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s).").[4]  The language in § 1B1.2(c) is "<u>mandatory</u> in its direction to the district court in regarding how it should select the proper offense guideline section and in how it should treat other offenses included within a plea agreement."  <u>United States v. Saldana</u>, 12 F.3d 160, 162 (9th Cir. 1993) (emphasis added).

Here, contrary to the USPO's conclusory opinion, the plea agreement contains the requisite stipulation of facts to establish that defendant violated 18 U.S.C. § 1001(a)(1) <u>and</u> 18 U.S.C. § 1512(b)(3).  Therefore, pursuant to § 1B1.2(c), defendant must be sentenced as if he had been convicted of both offenses, leading to an application of § 2J1.2 in determining the base offense level.

While the PSR refers to § 1B1.2(a) and the lack of the "requisite stipulation" under that subsection, the applicable section to the facts of this case is actually § 1B1.2(<u>c</u>).  A factual statement or stipulation contained in a plea agreement is a "stipulation for purposes of subsection (a) only if both the defendant and the government explicitly agree that the factual

---

[4] The PSR incorrectly refers to U.S.S.G. § 1B1.2(a), which is not the subsection that applies to the facts of this case, as discussed below in more detail.  (PSR at p. 10 fn.1.)

10

statement or stipulation is a stipulation for such purposes."
U.S.S.G. § 1B1.2, Application Note 1.  The government agrees that
there is no such stipulation in this case.  However, this limitation
does <u>not</u> apply to § 1B1.2(c), as evidenced by the text of the
Guidelines and by the Ninth Circuit's interpretation of this
subsection.

The Ninth Circuit has applied § 1B1.2(c) to circumstances nearly
identical to the ones of this case.  In <u>United States v. Gutierrez-
Sanchez</u>, 587 F.3d 904 (9th Cir. 2009), the defendant challenged his
sentence because he pled guilty to a violation of 18 U.S.C. § 1001
for making false statements to federal agents in providing a false
name, but was sentenced under the Guidelines for a related, more
serious offense, namely illegal re-entry in violation of 8 U.S.C.
§ 1326.  Despite the parties' stipulation in the plea agreement to
apply § 2B1.1 to calculate the lower base offense level, the district
court applied the higher illegal re-entry guideline section instead
pursuant to § 1B1.2(c).  The Ninth Circuit affirmed.  "Since in his
plea agreement Gutierrez admitted facts that established the more
serious offense on which his sentence was based, the district court
did not err in its calculation of the Guidelines recommended
sentence."  <u>Id</u>. at 906.  "Under the Guidelines, Gutierrez' ***statement
in his plea agreement constituted a 'stipulation that specifically
establish[ed] the commission of [the] additional offense'*** of an alien
illegally present in the United States, in violation of 8 U.S.C.
§ 1326."  <u>Id</u>. (quoting U.S.S.G. § 1B1.2(c)) (emphasis added).

Contrary to the USPO's implication, admissions need not follow
any prescribed format to "specifically establish" the commission of
another crime within § 1B1.2(c).  The "stipulation" in <u>Gutierrez-

11

Sanchez referred to the factual basis in the plea agreement, and not a separate stipulation or agreement by both parties on the applicability of § 1B1.2(c) or other guideline sections.  See Exhibit 1, United States v. Gutierrez-Sanchez, No. 3:08-CR-759-LAB, Dkt. 16 (Plea Agreement); see also, Saldana, 12 F.3d 160, 163 (the application of § 1B1.2(c) was based "on the **facts stipulated** in the plea agreement which established the commission of other offenses") (emphasis added).  The factual admissions in a plea agreement need not track the elements verbatim, and the court may draw reasonable inferences.  For example, in Saldana, the Ninth Circuit concluded that the elements of food stamp fraud offenses were "specifically established" for purposes of § 1B1.2(c), even if the facts in the plea agreement did not spell out the required mens rea, where that mental state was a necessary inference of the facts to which defendant did stipulate.  Id. at 162-63.

Applying these principles here, defendant's extensive admissions in the factual basis of the plea agreement "specifically establish" his commission of obstruction of justice in the form of witness tampering, as outlined in Section III.A.1 above.  Based on the factual admissions in the plea agreement, defendant has admitted the elements of a violation of 18 U.S.C. § 1512(b)(3), and the guidelines applicable to the offense of obstruction apply in this case.

The multiple convictions, in turn, trigger the grouping rules of U.S.S.G. § 3D1.1.  Under those rules, defendant's convictions group under U.S.S.G. § 3D1.2(a) because they "involve the same victim and the same act or transaction."  Whenever two convictions are grouped on this basis, a court should apply the Guideline for the conviction that results in the higher offense level.  See U.S.S.G. § 3D1.3(a).

Here, like in <u>Gutierrez-Sanchez</u>, that leads to the application of the guideline section that results in the higher offense level, § 2J1.2.

### 3. The Extensive Scope Enhancement Applies

Pursuant to U.S.S.G. § 2J1.2(b)(3)(C), a 2-level enhancement applies if the offense was "extensive in scope, planning, or preparation."  As defendant admitted in his plea agreement, on June 1, 2017, defendant traveled to Las Vegas with a City staffer, a staffer for Councilmember Jose Huizar, and three businesspersons, including a wealthy Chinese businessman (Businessperson A),[5] a lobbyist and former public official, and a developer.  (PSR ¶ 9.) During the trip, defendant accepted $10,000 in cash from Businessperson A, $1,000 in chips for gambling that he returned, and tens of thousands of dollars in expenses including a two-night stay at a hotel, dinner, bottle service at a club, and female escort services paid for by Businessperson A.  (PSR ¶¶ 10-12.)  On June 12, 2017, defendant accepted $5,000 in cash from Businessperson A at a golf charity event at the Morongo casino in Palm Springs.  (PSR ¶ 13.)  During this time, defendant discussed introducing Businessperson A to developers in Los Angeles to help Businessperson A's cabinet business, and arranged a lunch with one developer on June 19, 2017, attended by defendant, Businessperson A, and the developer. (PSR ¶ 14.)

On August 10, 2017, Businessperson A began actively cooperating with law enforcement, including recording meetings with defendant. On October 19, 2017, February 7, 2018, and December 31, 2018,

---

[5] Contrary to the USPO's suggestion (PSR Ltr. at 3), Businessperson A was <u>not</u> cooperating with the government at the time of this underlying corrupt conduct.

13

defendant, accompanied by his attorneys, participated in voluntary interviews with the USAO and FBI, which he elected to not have recorded. Despite having the express option to decline to answer any questions (or even to decline to participate in any of the interviews at all), defendant chose instead to make multiple materially false statements in each of his three interviews, including regarding his conversations with Businessperson A about his FBI interviews and the benefits he received from Businessperson A, among other topics. (PSR ¶¶ 18, 25, 33-36.) In addition, prior to and after each interview, defendant met with and explicitly instructed Businessperson A on how to lie to and withhold information from the FBI in order to protect defendant from criminal liability, including additional liability created by his lies to the FBI/USAO. (PSR ¶¶ 17, 22-24, 27-29, 31-32.)

These comprehensive and detailed facts demonstrate that defendant's scheme to falsify material facts – that continued intermittently over a yearlong period – was extensive in scope. Courts have applied the 2-level enhancement when, as here, a defendant's obstruction "offense was far from an isolated occurrence." United States v. Jensen, 248 F. App'x 849, 851 (10th Cir. 2007) (unpublished) (affirming 2-level enhancement finding an offense "was otherwise extensive in scope"). Here, defendant lied to the FBI multiple times during each of his three separate interviews and engaged in obstructive conduct and attempted witness tampering multiple times on at least three additional separate occasions. Far from isolated, defendant's obstructionist conduct was pervasive, persistent, and plainly designed to thwart a criminal investigation rapidly closing in on him. Under such circumstances, the 2-level

14

enhancement is appropriate.  See, e.g., United States v. Rodriguez, 499 F. App'x 904, 909 (11th Cir. 2012) (per curiam) (unpublished) (applying the enhancement to a defendant that made false claims three times), cert. denied, 133 S.Ct. 1844, 2013 WL 961877 (Apr. 15, 2013). In addition, defendant's scheme to falsify material facts lasted for at least 14 months, from the first time defendant met with Businessperson A in advance of his first FBI interview on October 4, 2017 to the third FBI interview during which defendant lied on December 31, 2018.  Courts have applied this enhancement to schemes lasting many months.  See, e.g., United States v. Tomaskovic, 275 F. App'x 884 (11th Cir. 2008) (unpublished) (where obstructive conduct lasted sixteen months, finding offense was extensive in scope, warranting 2-level increase to base offense level).

Applying this enhancement is the only way to account for the fact that defendant made multiple false statements on multiple occasions and engaged in attempted witness tampering on multiple occasions.  Without the application of this enhancement, defendant's offense level would be the same as a person who engaged in the isolated occurrence of a single statement during a one-time instance of attempting to influence a witness' statement to law enforcement. The 2-level enhancement is appropriate under the facts of this case and necessary to distinguish defendant from less culpable criminal actors.

**B.    The Abuse of Public Trust Enhancement Applies**

Pursuant to U.S.S.G. § 3B1.3, the abuse of public trust enhancement applies if the defendant occupied a position of trust and used that position to significantly facilitate the commission or concealment of a crime.  The government asserts the unique facts of

1  this case support such a finding here in multiple ways.

2       "Englander was the councilmember for Council District 12 in the

3  San Fernando Valley from 2011 until his resignation on December 31,

4  2018," and served as the Council President Pro-Tempore and as a

5  member on various City committees, including the powerful Planning

6  and Land Use Committee.  Defendant was also a reserve member of the

7  Los Angeles Police Department. (PSR ¶¶ 7-8.)  Defendant developed a

8  relationship with Businessperson A based on his position as a City

9  Councilmember who had the ability to favorably introduce

10  Businessperson A to important developers in Los Angeles, to help with

11  Businessperson A's business.  In particular, shortly after accepting

12  $15,000 cash and other benefits from Businessperson A in Las Vegas

13  and Palm Springs, defendant used his official position to arrange a

14  meeting between Businessperson A and a developer so that

15  Businessperson A could pitch his business.  (PSR ¶ 14.)  Defendant's

16  subsequent scheme to falsify material facts, including the scheme to

17  tamper with a witness and to lie to the FBI and USAO, all stemmed

18  from this underlying conduct of accepting benefits in exchange for

19  using his position in the City to help Businessperson A.

20  Furthermore, defendant relied on his position of trust in attempting

21  to corruptly influence Businessperson A's testimony to the FBI and

22  USAO, in that his words had more power and effect because of his

23  position as an elected official.  Defendant leveraged his City

24  Council position as a carrot and a stick to further his obstruction

25  scheme, as demonstrated by his sworn admissions.  That is, defendant

26  knew that Businessperson A would have a strong interest in defendant

27  avoiding criminal prosecution because defendant could serve as a

28  financial boon to Businessperson A's business if defendant pushed

developers to hire Businessperson A.   Indeed, this was the central premise of their relationship.  On the other hand, if Businessperson A was truthful to the FBI and incriminated defendant, and if defendant was nevertheless able to evade losing his City position, defendant could use his position to retaliate against Businessperson A and ensure developers did not hire Businessperson A.

A clear example of defendant exploiting his position to enhance his obstruction crimes was during the meeting in the car on February 12, 2018.  (PSR ¶¶ 27-29.)  At the conclusion of what was defendant's most brazen and desperate attempts to get Businessperson A to lie to the FBI to protect defendant as the investigation closed more tightly around him, "Englander agreed to introduce Businessperson A to Englander's builder 'friend' and Englander agreed to tour Businessperson A's showroom."  (PSR ¶ 29.)  In so doing, defendant clearly connected what Businessperson A had to gain from defendant and defendant's City position, if Businessperson A played along with defendant's obstruction scheme.

Defendant also admitted that he violated the public's trust by failing to disclose all the financial benefits he received from Businessperson A on his ethics disclosure forms.  Specifically, defendant "reported $1,202 worth of gifts/benefits on his Form 700 for the year 2017, but did not report, among other things, the $15,000 cash he received from Businessperson A as a gift or benefit."  (PSR ¶ 30.)  These City forms, like many important government forms, rely on the honor and integrity of the public official for accuracy but otherwise lack a significant check on their veracity.  Had defendant accurately completed these required City forms by truthfully reporting the financial benefits that he secretly received

from Businessperson A, it is likely his conduct would have been uncovered earlier.

Because the base offense levels for 18 U.S.C. § 1001 and 18 U.S.C. § 1512 do not take into account defendant's position as an elected public official, the § 3B1.3 adjustment is the only guideline section that takes into account that defendant abused his position of trust in the commission of the offenses.  As the court explained in United States v. Ebert, 99 F.3d 448 (D.C. Cir. 1996) (unpublished), "section 1001 can be violated by anyone making a false statement 'in any matter within the jurisdiction of any department or agency of the United States,' not only by someone in a position of trust."  Id. But it is especially harmful to our governmental institutions when the person lying is a person the public has entrusted with serving the public good, and where the lie facilitates the public official unjustly enriching themselves.  In Ebert, the court affirmed the application of the § 3B1.3 adjustment in a case in which a former FBI Special Agent pleaded guilty to a violation of 18 U.S.C. § 1001.

In addition, courts have applied the § 3B1.3 adjustment when a defendant holding a position of trust, such as a law enforcement officer, lies during the course of an investigation.  For example, in United States v. Coumaris, 198 F. App'x 9, 10–11 (D.C. Cir. 2006) (unpublished), "[w]hen conveying false information to local law enforcement officers, [the defendant] repeatedly referred to himself as an 'IRS Agent' or 'Agent,' and at one point even gave the police his badge number."  The court affirmed the application of the § 3B1.3 adjustment, explaining that as an IRS agent, the defendant occupied a position of trust and "abused it on multiple occasions using his special credibility with law enforcement officials in an attempt to

avoid detection and to divert attention from his criminal conduct." Id. Here, too, defendant made false statements to the FBI and USAO while he occupied a position of public trust, namely as an elected City Councilmember and, as defendant highlighted for the FBI/USAO during his interview, as a reserve police officer who participated in enforcement actions, positions he used in attempting to falsely bolster his credibility.

For each of these reasons, the abuse of trust enhancement applies in this case.

Therefore, the government calculates the total offense level to be 15, as follows:

| | | |
|---|---|---|
| Base Offense Level: | 14 | U.S.S.G. §§ 1B1.2(c), 2B1.1(c)(3), 2J1.2(a) |
| Extensive in Scope: | +2 | U.S.S.G. § 2J1.2(b)(3)(C) |
| Abuse of Public Trust: | +2 | U.S.S.G. § 3B1.3 |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1 |
| **Total** | **15** | |

## C.  In the Alternative, the Total Offense Level Is 8

If the Court disagrees with the applicability of the obstruction guidelines in this case, and instead calculates a base offense level of 6 under § 2B1.1, the government respectfully urges the Court to find a total offense level of 8 based on the following calculation: (i) a base offense level of 6 under U.S.S.G. § 2B1.1; (ii) a +2 adjustment under U.S.S.G. § 3C1.1 for obstruction of justice; (iii) a +2 adjustment under U.S.S.G. § 3B1.3 for abuse of public trust; and (iv) a -2 adjustment for acceptance of responsibility.

Section 3C1.1 of the Sentencing Guidelines provides a 2-level sentencing adjustment where "(1) the defendant willfully obstruct[s]

or impede[s], or attempt[s] to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct relate[s] to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." U.S.S.G. § 3C1.1.  Here, defendant attempted to obstruct justice with respect to the instant investigation by repeatedly lying to law enforcement and attempting to tamper with a witness.  The count of conviction, Count One, encompasses conduct from August 2017 to December 2018.  While at first the FBI and USAO were investigating potential bribery violations (the Federal Investigation), as the investigation progressed and as defendant's conduct evolved, the government also began investigating the offense of conviction, namely, defendant's lies and witness tampering in addition to the underlying bribery schemes.  See, e.g., CR 1 at ¶¶ 33, 35, 36 (witness tampering counts alleging possible commission of Federal offenses including federal program bribery, mail and wire fraud, and making false statements).

The § 3C1.1 adjustment applies to conduct that involves "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense."  U.S.S.G. § 3C1.1 Application Note 4(G).  The adjustment also applies to conduct that involves "unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so."  U.S.S.G. § 3C1.1 Application Note 4(A).  Here, defendant obstructed and impeded the official investigation of the instant offense, as well as the closely related Federal Investigation into bribery, by repeatedly providing

20

materially false statements to the FBI and USAO.  In addition, defendant repeatedly unlawfully attempted to influence a witness in the false statement/obstruction investigation and the Federal Investigation, namely, Businessperson A, to prevent Businessperson A from revealing defendant's corrupt conduct, including his lies and witness tampering.

Applying the enhancement in this case does not result in double counting.  For example, in a recent case from this district affirmed by the Ninth Circuit, the Honorable Dale S. Fischer applied the § 3C1.1 obstruction enhancement in a case involving a single count of conviction for a violation of 18 U.S.C. § 1001.  United States v. Dredd, No. 19-50220, 2020 WL 6281513 (9th Cir. Oct. 27, 2020) (unpublished).  While defendant was convicted for lying to FBI agents resulting in a base offense level 6 under § 2B1.1,[6] the district court applied a 2-level obstruction enhancement for defendant's false testimony at trial.  The Ninth Circuit affirmed the Guidelines calculation, finding that "[t]he district court did not engage in impermissible double-counting by merely assessing the nature and circumstances of the offense with reference to Dredd's lies at trial." Id. at *2.  Here too, defendant's conduct in making false statements to the FBI and USAO was distinct from his witness tampering conduct towards Businessperson A.  Applying the obstruction enhancement appropriately accounts for defendant's extensive witness tampering conduct and does not constitute impermissible double-counting.

---

[6] If the Court applies § 2J1.2 in this case, as the government urges, then this adjustment does not apply.  See § 3C1.1 Application Note 7.

Accordingly, the two-level adjustment under § 3C1.1 applies to defendant's Guidelines calculation.

**IV.   CONCLUSION**

For the reasons stated above, the government respectfully requests that the Court apply the above base offense level, enhancements, and adjustments, resulting in a total offense level of 15 and a Guidelines range of 18 to 24 months of imprisonment.

Exhibit 1

# ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case Number __08CR0759LAB__ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | PLEA AGREEMENT |
| | ) | (Fast-Track) |
| HUGO GUTIERREZ-SANCHEZ, | ) | |
| | ) | FILED |
| Defendant. | ) | APR 1 0 2008 |
| | ) | |

Plaintiff, United States of America, and defendant, HUGO GUTIERREZ-SANCHEZ, with the advice and consent of defense counsel identified below, agree that this document sets forth the full and complete plea agreement between the parties.

1. <u>Agreement Pursuant to Early Disposition (Fast-Track) Program</u>. The disposition contemplated by this agreement is pursuant to an early disposition (fast-track) program authorized by the Attorney General of the United States and the United States Attorney for this District.

    a. <u>Fast-Track Program Requirements</u>. The concessions by and recommendations of the United States in this agreement are based on defendant's compliance with the following program requirements, to which defendant specifically agrees. In exchange for the Government's concessions defendant; (1) waives the right to be indicted by a grand jury; (2) will not file/argue any substantive motions, including those described in Federal Rule of Criminal Procedure 12; (3) will plead guilty to the charge(s) described in paragraph two below within 60 days of arraignment on the complaint initially filed against defendant ("arraignment"); (4) agrees to immediate sentencing; (5) waives the right to appeal or collaterally attack the plea, conviction, or sentence; and (6) as set forth in paragraph 11 below, stipulates and agrees to an order of removal from the United States entered by Executive Office for Immigration Review or authorized Department of Homeland Security official, and unconditionally waives all rights to appeal, reopen, or collaterally attack the order of removal. Defendant understands that the removal order will not be executed until defendant has completed any criminal sentence in this or any other case.

    b. <u>Timeliness/Offer Revocation</u>. This disposition is conditioned further on (1) the original plea agreement being signed by defendant and defense counsel and returned to Government counsel not later than five business days before the disposition date set by the court at the continued preliminary hearing, and (2) the guilty plea being entered on or before April 14, 2008. Further, in the event that defendant seeks a delay of the disposition to a date beyond 60 days of arraignment, or otherwise failed to comply with these timeliness requirements, the United States may in its sole discretion revoke the disposition offer contained in this plea agreement and seek defendant's indictment on the underlying charge(s).

2. <u>The Plea, Penalties, Waivers and Representations</u>. Defendant will plead guilty to an information charging a violation of Title 18, United States Code, Section 1001 ("the guilty plea"), which alleges that defendant committed said offense on or about March 3, 2004. The charge carries a maximum penalty of five years' imprisonment, a $250,000 fine, supervised release of not more than three years' and a mandatory $100 penalty assessment.

    a. Defendant understands that under this guilty plea defendant waives the right to:

    (1) continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;
    (2) a speedy and public trial by jury;
    (3) the assistance of counsel at all stages of trial;
    (4) confront and cross-examine adverse witnesses;
    (5) present evidence and to have witnesses testify on behalf of defendant; and
    (6) testify or not have any adverse inferences drawn from the failure to testify.

Def. Initials: HGS

b.   Defendant also represents that:

(1)   Defendant has had full opportunity to discuss all the facts and circumstances of this case with defense counsel, and has a clear understanding of the charges and the consequences of this plea;
(2)   No one has made any promise or offered any rewards in return for this guilty plea, other than those contained in this agreement;
(3)   No one has threatened defendant or defendant's family to induce this guilty plea; and
(4)   Defendant is pleading guilty because in truth and in fact defendant is guilty and for no other reason.

3.   <u>Defendant Acknowledges No Pretrial Right To Be Provided With Impeachment And Affirmative Defense Information</u>. The Government represents that any information establishing the factual innocence of defendant known to the undersigned prosecutor in this case has been turned over to defendant. The Government will continue to provide such information establishing the factual innocence of defendant. Defendant understands that if this case proceeded to trial, the Government would be required to provide impeachment information relating to any informants or other witnesses. In addition, if defendant raises an affirmative defense, the Government would be required to provide information in its possession that supports such a defense. Defendant acknowledges, however, that by pleading guilty defendant will not be provided this information, if any, and defendant also waives the right to this information. Finally, defendant agrees not to attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

4.   <u>Nature of the Offense</u>.

a.   <u>Elements Explained</u>. Defendant understands that the offense to which defendant is pleading guilty has the following elements:

(1)   Defendant made a false statement in a matter within the jurisdiction of the U.S. Department of Homeland Security;
(2)   Defendant acted willfully, that is deliberately and with knowledge that the statement was untrue; and
(3)   That the statement was material to the U.S. Department of Homeland Security decisions or activities..

b.   <u>Factual Basis and Relevant Conduct Information</u>. Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime, and admits that there is a factual basis for this guilty plea. The parties agree that the following facts are true and undisputed and may be considered as relevant conduct under United States Sentencing Guidelines (Guidelines or USSG) § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1). Defendant specifically admits and agrees that, on the date alleged in the Information:

(1)   Defendant agrees that on or about March 3, 2004 within the Southern District of California, defendant, in a matter within the jurisdiction of the United States Department of Homeland Security, a department and agency of the United States, did knowingly and willfully make false, fictitious and fraudulent statements and representations as to material facts in that he did represent and state to a federal officer that his name was Salvador Beltran-Bera, whereas in truth and fact, as defendant then and there well knew that statement and representation was false, fictitious and fraudulent when made. *February 22, 2004   ~~~~* HGS
(2)   Defendant agrees further that the offense involved a violation of a prior, specific administrative order because defendant is an unlawful alien who was lawfully deported on ~~December 5, 2007~~ prior to the instant offense and as part of that deportation, defendant was ordered by the immigration judge not to reenter the United States without requesting and obtaining permission from the Attorney General or designated successor, and that this fact results in the increase in offense level set forth in paragraph 5 below.

5.   <u>Applicability of Sentencing Guidelines - Parties' Guideline Calculations</u>. Defendant understands the sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). Defendant understands further that in imposing the sentence, the sentencing judge must consult the Guidelines and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that they are only advisory, not mandatory, and the Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. Although the parties understand that the Guidelines are only advisory and just one of the factors the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties agree that USSG § 2B1.1 applies in this case and that the Sentencing Guidelines are to be computed as follows, including the Specific Offense Characteristic ("SOC") for being deported and removed after a prior, specific administrative order, pursuant to USSG § 2B1.1.

Def. Initials: HGS

| | | |
|---|---|---|
| Base Offense Level: | = | 6 |
| SOC-Violation of Administrative Order under USSG § 2B1.1(b)(8)(C), Increase to Level 10: = | | 10 |
| Adjustment-Acceptance of Responsibility under USSG § 3E1.1: | = | -2 levels |
| Total Offense Level: | = | 8 |

6. No Other Adjustments, Departures or Sentence Reductions under 18 U.S.C. § 3553 . The parties agree not to recommend any upward or downward adjustments or departures, including any criminal history departures under USSG § 4A1.3, or other sentence reductions under 18 U.S.C. § 3553.

7. Acceptance of Responsibility. Notwithstanding paragraph four above, the Government will not recommend any adjustment for Acceptance of Responsibility if defendant: (a) fails to admit a complete factual basis for the guilty plea at the time it is entered; or (b) denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the Court or probation officer; or (c) fails to appear in court; or (d) engages in additional criminal conduct; or (e) attempts to withdraw the guilty plea; or (f) refuses to abide by any lawful court order.

8. No Agreement as to Criminal History Category. The parties have no agreement as to defendant's Criminal History Category (CHC). However, based on information presently available to the United States reflected on the defendant's "rap sheet," the disposition offer contained in this plea agreement was made based on the Government's belief that defendant's criminal history placed defendant in CHC III. The parties further agree that in the event contrary or additional information is discovered concerning defendant's criminal history which changes defendant's CHC before defendant is sentenced, then the Government may (a) recommend a sentence based upon the agreed total offense level of 8 at the new CHC; or (b) may withdraw from the plea agreement or move to set aside the guilty plea or both.

9. Parties' Sentencing Recommendations - Immediate Sentencing. The parties agree and jointly recommend that the sentence in this matter should be 9 months' imprisonment followed by three years' supervised release. The parties further agree and recommend that defendant is to remain outside of the United States during the supervised release period under the provisions of 18 U.S.C. § 3583(d). The parties further agree and recommend immediate sentencing upon specific findings by the Court that there is information in the record sufficient to enable the meaningful exercise of sentencing authority pursuant to 18 U.S.C. § 3553 without a presentence investigation and report. The Court's failure to follow this recommendation does not constitute a basis to withdraw the guilty plea.

10. Sentence Is Within Sole Discretion of Judge. This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). Defendant understands that the sentence is within the sole discretion of the sentencing judge. The Government has not made and will not make any representation as to what sentence defendant will receive. Defendant understands that the sentencing judge may impose the maximum sentence provided by statute, and is also aware that any estimate of the probable sentence by defense counsel is a prediction, not a promise, and is not binding on the Court. Likewise, the recommendation made by the Government is not binding on the Court, and defendant's actual sentence remains uncertain at this time. Defendant also has been advised and understands that if the sentencing judge does not follow any of the parties' sentencing recommendations, defendant nevertheless has no right to withdraw the guilty plea.

11. Stipulated Removal. Either before or immediately following sentencing, defendant stipulates and agrees to an order of removal from the United States entered by Executive Office for Immigration Review or authorized Department of Homeland Security official. Defendant understands that defendant will not be removed until defendant has served any criminal sentence imposed in this or any other case. Defendant further waives any right to appeal, reopen or challenge the removal order.

12. Defendant Waives Appeal and Collateral Attack. In exchange for the Government's concessions in this plea agreement, defendant waives, to the full extent of the law, any right to appeal or to collaterally attack the guilty plea, conviction and sentence, including any restitution order, unless the Court imposes a custodial sentence above the greater of the high end of the guideline range recommended by the Government pursuant to this agreement at the time of sentencing or statutory mandatory minimum term, if applicable. If the custodial sentence is greater than the high end of that range, the defendant may appeal, but the Government will be free to support on appeal the sentence actually imposed. If defendant believes the Government's recommendation is not in accord with this agreement, defendant will object at the time of sentencing; otherwise the objection will be deemed waived. If defendant breaches this plea agreement, at any time, by appealing or collaterally attacking the conviction or sentence, in any way, the Government may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the Government may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

HGS

13. **Crimes after Arrest or Breach of the Agreement Will Permit the Government to Recommend a Higher Sentence or Set Aside the Plea.** This plea agreement is based on the understanding that, prior to defendant's sentencing in this case, defendant has not committed or been arrested for any offense not known to the Government. If defendant has engaged in or engages in additional criminal conduct during this period, or breaches any of the terms of any agreement with the Government, the Government will not be bound by the recommendations in this plea agreement, and may recommend any lawful sentence. In addition, at its option, the Government may move to set aside the plea.

14. **Entire Agreement - Modification Must Be in Writing - Effective Date.** This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties. This agreement commences and becomes effective when the parties named below sign and date this document.

15. **Defendant and Counsel Fully Understand Agreement - Defendant Satisfied with Counsel.** By signing this agreement, defendant certifies that defendant has read it (or that it has been read to defendant in defendant's native language), has discussed its terms with defense counsel and fully understands its meaning and effect. Defendant also has communicated with defense counsel and is satisfied with the representation received.

KAREN P. HEWITT<br>
United States Attorney

**4.8.08**
Dated

DOUGLAS KEEHN
Assistant U.S. Attorney

**4|8|08**
Dated

NORMA A. AGUILAR
Defense Counsel

**IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION, PARAGRAPH 6 ABOVE, ARE TRUE.**

**4|8|08**
Dated

HUGO GUTIERREZ-SANCHEZ
Defendant

04/7/2008:WDK:psd

Def. Initials: HGS