KENDALL BRILL & KELLY LLP
Janet I. Levine (94255)
 jlevine@kbkfirm.com
Sarah E. Moses (291491)
 smoses@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile:  310.556.2705

Attorneys for Defendant
Mitchell Englander

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MITCHELL ENGLANDER,<br><br>　　　　　Defendant. | Case No. CR 20-35-JFW<br><br>**DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**<br><br>Judge:　John F. Walter<br>Date:　　January 25, 2021<br>Time:　　8:00 a.m.<br>Crtrm.:　7A |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Case No. CR 20-35-JFW
DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO
PRESENTENCE INVESTIGATION REPORT

1    Defendant Mitchell Englander, by and through his counsel of record, hereby

2  submits the attached response to the Government's Objections to Presentence

3  Investigation Report For Defendant Mitchell Englander.

4

5  DATED:  January 11, 2021          KENDALL BRILL & KELLY LLP

6

7

8                                        By:    /s/ Janet I. Levine

9                                              Janet I. Levine
                                               Attorneys for Defendant
10                                             Mitchell Englander

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1                          Case No. CR 20-35-JFW
DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO
PRESENTENCE INVESTIGATION REPORT

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ..................................................................................... 1

II.     THE GOVERNMENT IGNORES THE PARAMETERS OF THE
        PLEA AGREEMENT, BUT THE PLEA AGREEMENT SETS
        FORTH THE COUNT OF CONVICTION AND ITS STATEMENT
        OF FACTS ESTABLISHES THE CONDUCT UNDERLYING THAT
        CONVICTION ........................................................................................... 3

III.    THE GOVERNMENT'S ARGUMENTS IGNORE POLICY, FACTS,
        AND LAW ................................................................................................. 5

        A.      The Sessions Memo, The Government's Assumed Compliance
                With Applicable Department of Justice Policy, and Rational
                Conclusions Therefrom ................................................................. 5

        B.      Recent Cases in This District and Nationwide Apply § 2B1.1 to
                False Statement Offenses Like the One to Which Mr. Englander
                Pled Guilty; The Guidelines Confirm That Application ................ 6

        C.      Mr. Englander Did Not Stipulate To a Violation of 18 U.S.C. §
                1512(b)(3) and The Government Has Not Proven Such a
                Violation ....................................................................................... 8

        D.      The Guideline Enhancements Suggested By the Government Do
                Not Apply .................................................................................... 11

                1.      The Government's Objections .................................... 11

                2.      The Abuse of Trust Enhancement Does Not Apply ... 11

                3.      The Otherwise Extensive Enhancement Does Not Apply......... 16

        E.      The Government's Alternate Guideline Analysis That Argues
                For An Obstruction of Justice Enhancement if the Court Applies
                the § 2B1.1 Guideline Also Fails ................................................ 19

IV.     Conclusion .............................................................................................. 20

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*McDonnell v. United States*,
  136 S. Ct. 2355 (2016) ...................................................................... 13

*United States v. Coumaris*,
  198 F. App'x 9 (D.C. Cir. 2006) ...................................................... 15

*United States v. Dredd*,
  Case No. 2:15-CR-569-DSF (C.D. Cal.) ..................................... 7, 20

*United States v. Dredd*,
  Case No. 19-50220, 2020 WL 6281513 (9th Cir. Oct. 27, 2020) ........ 7, 8, 19, 20

*United States v. Ebert*,
  99 F.3d 448 (D.C. Cir. 1996) ........................................................... 15

*United States v. Flynn*,
  Case No. 1:17-CR-232-EGS (D.D.C.) ............................................. 7

*United States v. Garfinkel*,
  29 F.3d 1253 (8th Cir. 1994)…………………………………………...12

*United States v. Gould*,
  983 F.2d 92 (7th Cir. 1993) ............................................................. 12

*United States v. Gutierrez-Sanchez*,
  587 F.3d 904 (9th Cir. 2009) ......................................................... 8, 9

*United States v. Jensen*,
  248 F. App'x 849 (10th Cir. 2007) .................................................. 18

*United States v. Papadopoulos*,
  Case No. 17-CR-182 (RDM) (D.D.C.) ............................................. 7

*United States v. Rehal*,
  940 F.2d 1 (1st Cir. 1991) .............................................................. 12

*United States v. Rodriguez*,
  499 F. App'x 904 (11th Cir. 2012) ............................................. 17, 18

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

ii

Case No. CR 20-35-JFW

DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO
PRESENCE INVESTIGATION REPORT

*United States v. Tomaskovic*,
   275 F. App'x 884 (11th Cir. 2008)...................................................................17

*United States v. van der Zwaan*,
   Case No. 18-CR-31 (ABJ) (D.D.C.) ............................................................7

*United States v. Weinstock*
   153 F.3d 272 (6th Cir. 1998)………………………...………………………12

**Federal Statutes**

18 U.S.C.

   § 1001 ....................................................................................................*passim*

   § 1510 ..........................................................................................................10

   § 1512 ....................................................................................................*passim*

   § 1512(b)(3) ...........................................................................................*passim*

**Guidelines**

U.S.S.G.

   § 2B1.1.....................................................................................................*passim*

   § 2B1.1(c)(3).........................................................................................6, 8, 9

   § 2J1.2………………………………………………………………....5, 6, 7

   § 2J1.2(b)(3)(C) ...............................................................................11, 16, 17

   § 3B1.3...............................................................................................11, 12

   § 3C1.1...............................................................................................11, 19

**Other Authorities**

Bureau of Justice Statistics, Federal Criminal Case Processing
   Statistics, *available at* https://www.bjs.gov/fjsrc/tsec.cfm ...............................2

Memorandum For All Federal Prosecutors, Department Charging and
   Sentencing Policy, Office of the Attorney General, May 10, 2017,
   *available at* https://www.justice.gov/opa/press-
   release/file/965896/download.................................................................5

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO
PRESENCE INVESTIGATION REPORT

# I.    <u>INTRODUCTION</u>

On December 21, 2020, the United States Probation Office released its Presentence Investigation Report ("PSR") and Sentencing Recommendation for Mitchell Englander.  Dkt. Nos. 39, 40.  The PSR reflects that the presentence officer examined the crime to which Mr. Englander pled, the plea agreement, discovery and information produced by the government, including the government's sentencing analysis, personal information produced by Mr. Englander, including support letters, the guidelines and how those guidelines have been applied in other cases, and the applicable law.  Based on this information, the PSR made certain findings:

First, the applicable guideline for the offense conduct is contained in U.S.S.G. § 2B1.1, providing a base offense level of six (6);

Second, no enhancements are applicable, despite the government's push to apply several;

Third, with an acceptance of responsibility adjustment, the applicable guideline level is four (4), with a sentencing range of 0 to 6 months;

Finally, given Mr. Englander's life history and the particular guidelines applicable, as well as the sentences usually imposed for similar offenses, the PSR concludes a custody sentence would be "aberrant" and recommends a sentence of probation with a fine.

Mr. Englander agrees with the PSR and its recommendation.

The government has filed Objections, arguing that the PSR erred in determining which guideline section is applicable and that the PSR erred in not applying enhancements urged by the government.  *See* Dkt. No. 41, Government's Objections to Presentence Investigation Report for Defendant Mitchell Englander (hereinafter "Obj.").

The government's objections reveal that it is deeply frustrated by the guidelines plainly applicable to the plea agreement that the government drafted, negotiated, and executed—a plea agreement that charges a "scheme to falsify

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1

DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO
PRESENTENCE INVESTIGATION REPORT

1   material facts" in violation of 18 U.S.C. § 1001.  Exhibiting that frustration, the

2   government argues that this case is something that it charged in its indictment but

3   did not pursue to conviction and which the operative plea agreement does not

4   support: a conviction for a federal witness tampering and obstruction in violation of

5   18 U.S.C. § 1512(b)(3).[1]

6         To support its argument that this is a federal witness tampering case and not a

7   false statement case, the government relies on facts that are not part of the plea

8   agreement or its factual basis (Obj. at pp. 6-7), and are not proven or admitted to,

9   and are contrary to what actually occurred here.  It speculates about things that

10  could have, but did not, occur.  *See* Obj. at p. 3.  The government also misreads the

11  guidelines and commentary, as well as the case law, and attempts to extend the

12  statute and guidelines beyond their plain language.  Finally, it attempts to punish

13  Mr. Englander for conduct the government disapproves of but which is not part of

14  the crime of conviction and does not constitute a federal offense.  *See, e.g*., Obj. at

15  p. 17.

16        The PSR correctly concludes that the offense of conviction here—18 U.S.C. §

17  1001—has a base offense level of six (6), that no enhancements apply, and that with

18  acceptance of responsibility, the adjusted offense level is four (4).  The

19  government's arguments otherwise, addressed herein, fail.

20

21

22        ────────────────

23        [1] The government's Objections include a diatribe—conspicuously placed on
    the first page of their filing—against "wealthy public officials" and "white-collar
24  criminals" and the disparate sentences they receive. Obj. at p. 1, n.1. These
    hyperbolic statements, as they relate to Mr. Englander, are wholly inapplicable to
25  the present case. As the PSR notes, a custody sentence would be "aberrant" given
    the instant "1001" violation; data from the Bureau of Justice Statistics confirms this,
26  showing that a clear majority of defendants convicted of "1001" violations receive
    probation sentences. *See* Bureau of Justice Statistics, Federal Criminal Case
27  Processing Statistics, *available at* https://www.bjs.gov/fjsrc/tsec.cfm.

28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

                                    2                          Case No. CR 20-35-JFW
    DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO
                      PRESENTENCE INVESTIGATION REPORT

II.   **THE GOVERNMENT IGNORES THE PARAMETERS OF THE PLEA AGREEMENT, BUT THE PLEA AGREEMENT SETS FORTH THE COUNT OF CONVICTION AND ITS STATEMENT OF FACTS ESTABLISHES THE CONDUCT UNDERLYING THAT CONVICTION**

Any sentencing analysis must start with the count of conviction; here that is set forth in a plea agreement and its incorporated statement of facts negotiated and entered by the parties.  Dkt. No. 24.  The plea agreement here is simple: While the indictment included counts charging violations of 18 U.S.C. § 1001 (false statement) and 18 U.S.C. § 1512 (witness tampering/obstruction), and has a detailed set of alleged facts, in contrast, in the plea agreement the parties agreed that Mr. Englander would plead guilty to a single "1001" count and the remaining counts would be dismissed.  The plea agreement contained and attached a statement of facts that was carefully negotiated.  Unlike the indictment, the final plea agreement and the factual basis do not include the words "obstruction" or "witness tampering."  The factual basis to the plea agreement describes a false statement scheme, not a scheme to engage in federal witness tampering or to obstruct justice.

Ignoring the plea agreement the government drafted and executed, and the attached factual basis, the government attempts to define the conviction here based on a citation to Count One of the indictment, which alleges that Mr. Englander carried out a scheme "by conducting an obstruction and witness tampering campaign."  Obj. at pp. 6-7.  But the plea agreement does ***not*** adopt the allegations and factual statements in the indictment, and allegations of obstruction and witness tampering were not included in the plea agreement.[2]  Rather, the plea agreement's statement of facts is significantly different and less extensive than the indictment.

_____

[2] When asked by the Court about the facts underlying the plea agreement at the time of entry of the plea, AUSA Jenkins read directly from the plea agreement's statement of facts.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

3

Case No. CR 20-35-JFW

DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

Importantly, the plea agreement and factual basis drafted and agreed to by the government and entered in this case does not contain an admission that actions were taken by Mr. Englander to "hinder, delay, or prevent the communication to a law enforcement officer . . . of information relating to the ***commission or possible commission of a Federal offense*** . . ." 18 U.S.C. § 1512(b)(3) (emphasis added). While that language was in the indictment, it is not part of the plea here.  Instead, the plea agreement plainly states that Mr. Englander will plead guilty to a "scheme to falsify material facts . . . " and nothing more.  Dkt. No. 24 ¶ 4.

The elements of the crime of conviction, 18 U.S.C. § 1001, are set forth in the plea agreement:

> 1)  defendant had a duty to disclose material information;
>
> 2)  defendant falsified, concealed, or covered up such a fact by trick, scheme, or fraud;
>
> 3)  the falsified, concealed, or covered up fact was material;
>
> 4)  the falsification and/or concealment was knowing and willful; and
>
> 5)  the material fact was within the jurisdiction of the Executive Branch.

Dkt. No. 24 ¶ 4.  Notably, the plea agreement does not include admissions or stipulations to the facts necessary to establish a § 1512 violation or the elements of such a violation or even recite the elements of such a violation.[3]

---

[3] The government has acknowledged that its Objections set forth allegations that are not facts, but rather are merely things that were capable of having occurred. *See* Obj. at p. 3; *see also* Declaration of Janet I. Levine in Support of Defendant Mitchell Englander's Position Regarding Sentencing ¶ 15.  But speculation does not constitute evidence of proven facts.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

4

Case No. CR 20-35-JFW

DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

III. **THE GOVERNMENT'S ARGUMENTS IGNORE POLICY, FACTS, AND LAW**

   A. **The Sessions Memo, The Government's Assumed Compliance With Applicable Department of Justice Policy, and Rational Conclusions Therefrom**

On May 10, 2017, then-Attorney General Sessions issued a memorandum to all federal prosecutors setting forth Department of Justice charging and sentencing policy. Memorandum For All Federal Prosecutors, Department Charging and Sentencing Policy, Office of the Attorney General, May 10, 2017, *available at* https://www.justice.gov/opa/press-release/file/965896/download. The memo changed then-existing policy, which had allowed prosecutors more discretion in charging and resolving matters. The Sessions memo is existing policy applicable to the decision to pursue a charge here.

The Session memo is simple: it provides that prosecutors "should charge ***and pursue*** the most serious, readily provable offense." *Id*. (emphasis added). It defines the most serious offenses as "those that carry the most substantial guidelines sentence . . . " *Id*.

Here, the false statement offense under 18 U.S.C. § 1001 carries a base offense level of six (6), under U.S.S.G. § 2B1.1. *See, infra*, at pp. 6-8; PSR ¶ 41. It also carries a maximum sentence of five years. The obstruction/witness tampering offense in 18 U.S.C. § 1512(b)(3), on the other hand, has a base offense level of 14 (U.S.S.G. § 2J1.2) and a maximum sentence of twenty years. Both statutory violations were charged in the indictment, but the government pursued ***only*** the less serious false statement offense (and also dropped the more serious obstruction and witness tampering language from the offense description in the plea agreement and statement of facts).[4] Given the policy directive in the Sessions memo—that the

_____

[4] The government may try to argue that DOJ policy does not create

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Case No. CR 20-35-JFW

DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO PRESENCE INVESTIGATION REPORT

1  most serious readily provable offense must be pursued—the fact that the

2  government dropped the witness tampering charge in favor of the false statement

3  charge leads to the obvious conclusion here that the false statement offense is the

4  most serious offense that could have been readily proven.

5      **B.**     <u>**Recent Cases in This District and Nationwide Apply § 2B1.1 to**</u>

6              <u>**False Statement Offenses Like the One to Which Mr. Englander**</u>

7              <u>**Pled Guilty; The Guidelines Confirm That Application**</u>

8        As set forth above, Mr. Englander pled guilty to a "false statement scheme,"

9  in violation of 18 U.S.C. § 1001.  The plea agreement set forth the elements of a

10  "1001" violation; both sides agreed those elements were met.  U.S.S.G. § 2B1.1,

11  applied by the PSR to the offense to which Mr. Englander pled guilty, is the

12  properly applied guideline to the violation here.  *See* PSR ¶ 41.

13        The language of the guidelines, as well as a history of its usage, confirm this.

14  Commentary to § 2J1.2 makes clear that § 2J1.2 ***only*** applies on its face to "1001"

15  offenses when they have a statutory maximum of eight years imprisonment, and

16  they involve terrorism or sex offenses.  *See* PSR ¶ 41, n.1; *see also* U.S.S.G.

17  Appendix A.  Thus, the federal sentencing guidelines apply § 2B1.1 to "1001"

18  violations in most circumstances including those here, unless the count of conviction

19  establishes another offense.  *See* U.S.S.G. § 2B1.1(c)(3).  And the actual application

20  of the guidelines to similar cases confirm that § 2B1.1 provides the appropriate base

21  offense level.

22        One case of particular note, which was prosecuted by AUSA Veronica

23  Dragalin, the same AUSA who signed the pleading at issue here, is instructive.  In

---

substantive rights for a defendant.  But whether that is true is beside the point.  The
issue is what we can divine from the prosecutors' actions.  Indeed, the Sessions
memo is not cited for a substantive right; rather it is cited because one expects
experienced prosecutors like those assigned to this matter to follow DOJ policy, and
the prosecutors agreeing to the "1001" false statement plea here instead of insisting
on a § 1512 plea is strong evidence of the lack of proof of the "1512" offense.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

that case, *United States v. Dredd,* Case No. 19-50220, 2020 WL 6281513 (9th Cir. Oct. 27, 2020), a defendant was convicted after trial of violating 18 U.S.C. § 1001. The defendant, a former deputy sheriff assigned to the Los Angeles County Jail, lied to the FBI and prepared false reports to cover up actions by colleagues who violated the civil rights of a jail visitor. *Id*. at *1. The evidence in that case and related cases showed that many deputies were involved in the misconduct. *Id*. As noted below, the defendant testified at trial and was convicted. At the sentencing, which took place before Judge Fisher in 2019, this USAO filed a sentencing memo applying the § 2B1.1 guideline (not the § 2J1.2 guideline) to Mr. Dredd's conduct. *United States v. Dredd,* Case No. 2:15-CR-569-DSF (C.D. Cal.), Dkt. No. 311.

The conviction here is for the same basic conduct as in *Dredd*—a false statement or statements to agents in an investigation. There have been no changes to the guidelines impacting the analysis since *Dredd*. The same analysis that led the USAO to use guideline § 2B1.1 for Mr. Dredd should be applied here.

A review of a number of the cases arising from President Trump's 2016 campaign reveals a similar application of § 2B1.1 in false statement cases nationally. In *United States v. Flynn,* Case No. 1:17-CR-232-EGS (D.D.C.), former national security advisor Michael Flynn pled guilty, twice, to making false statements to the FBI regarding his contacts with foreign governments, including Russia. Mr. Flynn's plea agreement applied § 2B1.1 to his "1001" violation. *Id.* at Dkt. No. 3; *see also United States v. van der Zwaan*, Case No. 18-CR-31 (ABJ) (D.D.C.), Dkt. No. 8 (Mr. van der Zwaan pled guilty to making false statements to Robert Mueller's Special Counsel's Office about a September 2016 conversation Mr. van der Zwann had with Rick Gates and "Person A" and a report related to their work for a Ukrainian political party; Mr. van der Zwaan's plea agreement also applied § 2B1.1); *United States v. Papadopoulos*, Case No. 17-CR-182 (RDM) (D.D.C.), Dkt. No. 18 (Mr. Papadopoulos pled guilty to making false statements to

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

7                                                    Case No. CR 20-35-JFW
DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO
PRESENTENCE INVESTIGATION REPORT

1  the Special Counsel's Office in connection with the Mueller probe; his plea

2  agreement applied § 2B1.1 too).

3      These matters—especially *Dredd*—are instructive.  The plain language of §

4  2B1.1 confirms that section applies to "1001" violations, and United States

5  Attorney's Offices in this District and across the country have applied it

6  accordingly.  Because Mr. Englander did not stipulate to (and the government has

7  not otherwise proven) the elements of obstruction/witness tampering under 18

8  U.S.C. § 1512, the cross-reference provided by § 2B1.1(c)(3) does not permit

9  application of § 2J1.2.  Nor does § 2J1.2 apply to false statement cases where, as

10  here, the case does not involve terrorism or sex crimes.

11  **C.   Mr. Englander Did Not Stipulate To a Violation of 18 U.S.C. §**

12  **1512(b)(3) and The Government Has Not Proven Such a Violation**

13      The government argues that the offense of conviction establishes another

14  offense, a violation of 18 U.S.C. § 1512, and based on that argument, concludes that

15  the guidelines applicable to a violation of § 1512—U.S.S.G. § 2J1.2 (obstruction of

16  justice)—applies here.  The government's conclusion is wrong and so is its premise.

17      As set forth herein, the count of conviction does ***not*** establish the commission

18  of a § 1512 offense because not all the elements of a § 1512 offense are proven (or

19  even alleged).  In attempting to step away from the plain language of the plea

20  agreement, the government argues that Mr. Englander should be treated as if he

21  violated the "more serious crime of witness tampering" under 18 U.S.C. §

22  1512(b)(3), because they claim Mr. Englander stipulated to the more serious

23  offense.  Obj. at pp. 9-10.  The government then claims that under *United States v.*

24  *Gutierrez-Sanchez*, 587 F.3d 904 (9th Cir. 2009), the purported stipulation operates

25  like a conviction and the guideline applicable to the more serious offense should

26  apply.  The government argues that the instant case is "nearly identical" to

27  *Gutierrez- Sanchez*.  As support, the government attaches a copy of the plea

28

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd. Suite 1725 Los Angeles, CA 90067
DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

1  agreement in *Gutierrez-Sanchez*.  The government's reliance on *Gutierrez-Sanchez*

2  is misplaced.

3      In *Gutierrez-Sanchez*, the defendant pled guilty to a "1001" violation.  But

4  instead of sentencing him on the guideline applicable to that section, the court

5  sentenced him based on a higher guideline, finding that the facts ***to which he***

6  ***stipulated*** provided the more serious crime.  Indeed, the plea agreement contained a

7  specific stipulation to each fact to prove each element of the more serious charge.

8  *Id*. at 907-08.[5]

9      But here, Mr. Englander did not stipulate to facts that establish a violation of

10  18 U.S.C. § 1512(b)(3) or the elements of the § 1512 violation; rather, he agreed

11  only to facts that show a false statement offense.  The elements of the two offenses

12  are significantly different, including the intent requirement, and an application of the

13  proven facts to these elements shows the fatal flaw in the government's argument.

14      18 U.S.C. § 1512(b)(3) provides: "Whoever knowingly uses intimidation,

15  threatens, or corruptly persuades another person, or attempts to do so, or engages in

16  misleading conduct toward another person, with intent to . . . hinder, delay, or

17  prevent the communication to a law enforcement officer or judge of the United

18  States of information ***relating to the commission or possible commission of a***

19  ***Federal offense*** or a violation of conditions of probation, supervised release, parole,

20  or release pending judicial proceedings; shall be fined under this title or imprisoned

21  not more than 20 years, or both." (emphasis added).

22      The elements of § 1512(b)(3) are clear: the government must prove that a

23  defendant (1) knowingly used intimidation, threatened, or corruptly persuaded

24

25      [5] The government's argument at page 5, footnote 2 is inapposite.  The
26  government has not proven, and the plea agreement and its factual basis do not
    support, application of § 2J1.2 under the cross-reference set forth in § 2B1.1(c)(3).
27  The government's burden is accurately described in *Gutierrez-Sanchez*, as the
28  government admits, and they have not met that burden here.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

9                                                    Case No. CR 20-35-JFW
DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO
PRESENTENCE INVESTIGATION REPORT

another person, (2) with the intent to hinder, delay, or prevent the communication of information to a federal official, (3) relating to the commission or the possible commission of a federal offense.  It is a fundamental element of § 1512(b)(3) that the offense to which the witness tampering is directed must be a *federal offense*. But that just isn't the case here; there is nothing to suggest Mr. Englander's misstatements were directed to any federal offense.  And even if the other elements of § 1512 were met (and they were not), each element must be proven, and the failure to meet this element or any other element would be fatal.

In this case, Mr. Englander made false statements about his conduct in a twelve-day period in June 2017 in Las Vegas and at a Morongo Casino charity event.  The government has never claimed and does not even suggest that Mr. Englander's actions in that time period constituted a federal offense.  Rather, the conduct, while embarrassing and inappropriate, does not fall within any federal criminal statutory scheme.  (Had it, one can confidently assume the government would have charged it.)

Implicitly recognizing this missing element in their argument, the government attempts to boot strap a federal violation, claiming that the underlying predicate federal offense for the § 1512 offense was the § 1512 offense itself.  *See* Obj. at pp. 6-9.  That is, the government suggests that because Mr. Englander and Businessperson A supposedly determined to lie about a non-federal offense, that the very lie constitutes the predicate federal offense for purposes of § 1512.  *Id.*  This defies logic; the government cites no case that allows the alleged § 1512 violation to serve as the underlying predicate offense for the same § 1512 violation itself.

The government also confuses the requirement that the tampering be directed at a "federal offense" with a suggestion that it could have been directed at a federal investigation.  Obj. at pp. 6-7.  But the two—a federal offense and a federal investigation—are different, as the statutory language reflects.  *Compare* 18 U.S.C. § 1510 (investigation) *and* 18 U.S.C. § 1512 (offense).  Putting aside the

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Case No. CR 20-35-JFW

DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

government's baseless invitation to read the "federal offense" requirement out of §

1512 entirely, the plain language of the statute does not suggest that the object of the

tampering can be an ongoing federal investigation; rather, it provides that the

tampering activity must be related to a federal offense.

### D.    The Guideline Enhancements Suggested By the Government Do Not Apply

#### 1.    The Government's Objections

The PSR applied § 2B1.1 to the offense conduct and found no enhancements

applicable, rejecting the enhancements suggested by the government. *See* Obj. at

pp. 2-3.  The government objects to both conclusions arguing that the Court should

apply the § 2J1.2 guideline level of 14 and also enhance that already high guideline

level by two levels for abuse of trust (U.S.S.G § 3B1.3) and another two levels for

conduct extensive in scope (U.S.S.G. § 2J1.2(b)(3)(C)).  Obj. at pp. 13-19.  The

government alternatively argues that if the Court finds the § 2B1.1 guideline level

applies, it should enhance two levels for abuse of trust and two levels for obstruction

(U.S.S.G. § 3C1.1).  Obj. at pp. 19-22.  As is set forth herein and in the PSR, none

of the urged enhancements are applicable.

#### 2.    The Abuse of Trust Enhancement Does Not Apply

The government urges this Court to reject the PSR's conclusion that no abuse

of trust enhancement applies and instead apply a two-level enhancement for abuse

of trust under U.S.S.G. § 3B1.3.  Obj. at pp. 15-19; PSR ¶ 46.  In making this

argument, the government fails to address the requirements of § 3B1.3, and apply

the facts of this matter to the enhancement it urges.  *See* Obj. at pp. 15-19.

U.S.S.G. § 3B1.3 permits a two-level sentencing enhancement when "the

defendant abused a position of public or private trust . . . in a manner that

***significantly facilitated*** the commission or concealment of the offense." (emphasis

added).  For the enhancement to apply, the defendant's "position of public or private

trust must have contributed in some significant way to facilitating the commission or

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Case No. CR 20-35-JFW

concealment of the offense (*e.g.*, by making the detection of the offense or the defendant's responsibility for the offense more difficult)."  U.S.S.G. § 3B1.3, Application Note 1.  The enhancement does not apply simply because a defendant occupies a position trust and it does not apply simply because a creative prosecutor can imagine some circumstance where that position of trust might be used to commit an offense.

Case law makes clear that a position of trust alone is not enough to warrant application of § 3B1.3.  *See United States v. Gould,* 983 F.2d 92, 94 (7th Cir. 1993) ("The fact that [defendant] was a police officer cannot, in and of itself, trigger the application of section 3B1.3 unless [defendant] also used the information he derived from being a police officer to conceal the illegal activities of himself and his co-conspirators."); *United States v. Rehal,* 940 F.2d 1, 5 (1st Cir. 1991) (same).[6]

Here, analyzing what actually occurred, the PSR concludes: "[T]here is no indication that [Mr. Englander's] position . . . significantly facilitated his commission or concealment of the offense."  PSR ¶ 46.  And indeed, the government points to no evidence that anything Mr. Englander did in his official position substantially facilitated the offense.  Section 3B1.3 and the case law make clear that the application of this enhancement requires much more than simply

---

[6] A similar rationale applies to defendants who have a "special skill" but did not use it to perpetrate the offense.  *See United States v. Weinstock*, 153 F.3d 272, 281 (6th Cir. 1998) (affirming refusal to apply enhancement where defendant-podiatrist was convicted of mail fraud in insurance fraud case because defendant's "status as a podiatrist, standing alone, d[id] not automatically mean that he used his medical skills to facilitate the crime" and defendant in fact "did not use his podiatric skills to facilitate the crime."  The court explained: "Although performing unnecessary medical procedures requires a special skill, refraining from providing such services and falsely billing therefore does not."); *United States v. Garfinkel*, 29 F.3d 1253, 1261 (8th Cir. 1994) (affirming refusal to apply enhancement against psychiatrist who was convicted of making false statements to the government and for mail fraud, and adopting the district court's finding that "[defendant's] skills as a psychiatrist were not used to perpetrate the frauds").

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Case No. CR 20-35-JFW

DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO
PRESENTENCE INVESTIGATION REPORT

1  asserting that Mr. Englander was a City councilman and reserve police officer and

2  speculating about what he might have done wrong having those positions.

3        Nevertheless, the government suggests, without any facts, that Mr. Englander

4  "used his official position to arrange a meeting between Businessperson A and a

5  developer" and concludes that constitutes an abuse of trust justifying the application

6  of the enhancement.  Obj. at p. 16.  But there are two problems with this argument.

7        First, the offense here is the false statement offense; it is not setting up a

8  lunch.  The lunch simply did not figure into the false statement offense at all, let

9  alone "significantly facilitate" it.

10        Second, no federal crime was committed by setting up a lunch because

11  nothing about the suggested lunch involves "official" action.  *See McDonnell v.*

12  *United States*, 136 S. Ct. 2355, 2371-72 (2016) (holding that  "[s]etting up a

13  meeting, talking to another official, or organizing an event (or agreeing to do so)—

14  without more—does not fit that definition of 'official act.'").  Nor was anything

15  about setting up lunch illegal.

16        Also, the government speculates that because Mr. Englander was a City

17  official, "his words had more power and effect" in influencing Businessperson A's

18  testimony.  Obj. at p. 16.  This argument, is first, without any factual basis.  Indeed,

19  it flatly ignores the facts pertinent to it and well known to the government: When

20  Mr. Englander met with Businessperson A, Businessperson A was already

21  cooperating with the government.  He was not influenced by Mr. Englander's

22  words; he was instead trying to influence Mr. Englander's words.  And it ignores the

23  government's role in arranging the taped meetings.  The meetings/communications

24  between Businessperson A and Mr. Englander that occurred before each of the three

25  times Mr. Englander met with AUSA Jenkins apparently, according to the discovery

26  produced by the government, were initiated, instigated, or encouraged by

27  Businessperson A.  *See* Declaration of Janet I. Levine In Support of Defendant

28  Mitchell Englander's Position Regarding Sentencing ¶¶ 7-13.  How Mr. Englander's

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Case No. CR 20-35-JFW

DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO
PRESENCE INVESTIGATION REPORT

1  words could have had the special "power and effect" to influence a government

2  cooperator at meetings orchestrated and taped by the government is unanswered and

3  unanswerable; and how this "power and effect" substantially facilitated Mr.

4  Englander's false statements is not explained at all.

5       The government makes the same flawed argument when it suggests that a

6  conversation between Mr. Englander and Businessperson A that occurred in a car on

7  February 12, 2018 and was taped by the government shows that Mr. Englander's

8  position substantially facilitated the false statement offense.  The government

9  writes: "A clear example of defendant exploiting his position to enhance his

10 obstruction crimes was during the meeting in the car on February 12, 2018 . . .

11 'Englander agreed to introduce Businessperson A to Englander's builder 'friend'

12 and Englander agreed to tour Businessperson A's showroom.'  In so doing,

13 defendant clearly connected what Businessperson A had to gain from defendant and

14 defendant's City position, if Businessperson A played along with defendant's

15 obstruction scheme."  Obj. at p. 17 (citing PSR ¶ 29).

16      The government ignores that Businessperson A was cooperating at this time,

17 and the meeting was taped by the FBI.  Its argument, in addition to omitting those

18 key facts, misstates what occurred, and fails to connect what occurred with Mr.

19 Englander using his position to substantially facilitate the false statement offense.

20      In the conversation at issue, presumably at the direction of law enforcement,

21 when Businessperson A entered the car, the first thing and last thing Businessperson

22 A brought up was his request to meet Mr. Englander's friend.  Levine Decl. ¶ 16.

23 This topic was not raised by Mr. Englander.  *Id*.  In the first moment of

24 conversation, Businessperson A mentioned that he had not brought the brochure for

25 Mr. Englander's friend; in the last moment, Businessperson A, *sua sponte*, again

26 asked about an introduction to Mr. Englander's friend.  *Id*.  These few comments—

27 made by the cooperator—are hardly Mr. Englander "exploiting his position."  And

28 what the prosecutors now speculate that Businessperson A could have thought about

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

14

Case No. CR 20-35-JFW

DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO
PRESENCE INVESTIGATION REPORT

1  the conversation or about the friend has absolutely no bearing on the showing the
2  government must make: that Mr. Englander's position substantially facilitated the
3  false statement count of conviction.  Most importantly, nothing about Mr.
4  Englander's official role substantially facilitated the charged offense—the required
5  connection the government conveniently ignores.

6       The government also argues that Mr. Englander should have the abuse of trust
7  enhancement applied because he failed "to disclose all the financial benefits he
8  received from Businessperson A on his ethics disclosure form."  Obj. at p. 17.  The
9  government devotes a paragraph to how important financial disclosures are and
10 speculates about the significance that a disclosure here would have had, but fails to
11 connect a lack of financial disclosures to actually significantly facilitating the instant
12 false statement offense.

13      Finally, the government suggests, without facts, that in the proffer Mr.
14 Englander used his position as a reserve police officer to "bolster his credibility."
15 Obj. at p. 19.  But, as described above, just having a position of trust does not trigger
16 the enhancement; the position of trust must significantly facilitate the offense.  The
17 government points to no facts to suggest that Mr. Englander's reserve deputy status
18 substantially facilitated his false statements.

19      Clearly the government is displeased that Mr. Englander was an elected
20 official and committed a crime.  But that displeasure does not justify application of
21 the abuse of trust enhancement.[7]

22

23 _____

24      [7] The cases on which the government relies, *United States v. Ebert*, 99 F.3d
25 448 (D.C. Cir. 1996), and *United States v. Coumaris*, 198 F. App'x 9 (D.C. Cir.
2006), do not hold otherwise.  In *Ebert*, the defendant did not dispute that the abuse
26 of a position of trust facilitated his offense.  That is not so here.  And in *Coumaris*,
27 the defendant, an IRS agent, unquestionably used his position to facilitate his
offense, repeatedly referencing his title when interviewed by law enforcement and at
28 one point providing his badge number while conveying the false information.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

15                                                           Case No. CR 20-35-JFW
DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO
PRESENTENCE INVESTIGATION REPORT

3.   **The Otherwise Extensive Enhancement Does Not Apply**

The government argues that the PSR erred in not applying a two-level enhancement for "extensive in scope, planning, or preparation" under U.S.S.G. § 2J1.2(b)(3)(C).  Obj. at pp. 13-15.  But the very cases the government cites and any analysis of the facts here shows that as far as Mr. Englander's conduct was concerned, it was not extensive in scope, planning, or preparation.

Mr. Englander pled to a false statement offense, arising from statements made in a multi-session proffer, occurring in October 2017, February 2018, and December 2018.

The sessions were governed by a single proffer agreement.  Each was instigated and led by AUSA Mack Jenkins.[8]  Levine Decl. ¶ 3.  Veronica Dragalin attended the last two sessions.  *Id*.  The agents always included FBI Case Agent Andrew Civetti.  *Id*.

Each session included a discussion of what occurred in June 2017 in Las Vegas and at the Morongo Casino.  *Id*. ¶ 4.  Each session also included questions related to Mr. Englander's contacts with Businessperson A.  *Id*.

Before each session, according to the discovery, Businessperson A communicated with Mr. Englander and arranged to have a meeting and conversation with Mr. Englander, which the FBI taped.  *See id*. ¶¶ 7-12.  At each pre-proffer taped session, Businessperson A directed the conversation to the topics that were

_____

[8] Before the second session, AUSA Jenkins indicated the agents were confused about one point and wanted to go back and review that topic with Mr. Englander.  Levine Decl. ¶ 6.  Before the third session, AUSA Jenkins indicated he heard that Mr. Englander had resigned his post and wanted to cover a couple of things, including why Mr. Englander resigned and what he intended to do.  *Id*. Given the government's complete control of timing and agenda, it seems at best untoward of them to ask for an extensive in scope, planning, or preparation enhancement.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Case No. CR 20-35-JFW

DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

1   subsequently discussed in the proffer.  *Id.* ¶ 13.  The cast of characters and the core

2   context of Mr. Englander's conversations remained steady.  Each contact was

3   orchestrated by the government, which controlled timing.

4       The government claims—despite having been in charge of the timing, the

5   substance, the planning, and the agenda—that because the three sessions spanned

6   over a year, the conduct was extensive in scope and planning.  But an analysis of the

7   cases they cite reveals how wrong this argument is.

8       The government cites to three cases to support its position that the Court

9   should apply a two-level enhancement under § 2J1.2(b)(3)(C).  The government

10  cherry-picks facts from these cases without context.

11      *United States v. Tomaskovic*, 275 F. App'x 884 (11th Cir. 2008) presents the

12  starkest example.  There, defendant pled guilty to violating the International

13  Parental Kidnapping Crime Act, after transporting his young son through four

14  different countries (including a country where defendant believed he could avoid

15  extradition) and four different states within the United States; filing a fraudulent

16  divorce petition; using prepaid cellular phones to avoid detection; and purchasing

17  false identity documents to hide from authorities.  *Id.* at 888.  The government cites

18  to *Tomaskovic* for the single fact that the defendant's conduct there lasted sixteen

19  months (Obj. at p. 15), without even acknowledging the surrounding complexity of

20  defendant's conduct—conduct on which the court explicitly relied in applying the

21  otherwise extensive enhancement.

22      Similarly, in *United States v. Rodriguez*, 499 F. App'x 904 (11th Cir. 2012),

23  the court applied the enhancement where defendant-inmate violated § 1001 by

24  falsely claiming a corrections officer had sexually assaulted her.  As part of her false

25  statements, defendant obtained a semen sample from her boyfriend while visiting

26  him in a guarded visiting room, then used that semen to stain her pants, which the

27  court found "could not have been an easy task."  *Id.* at 909.  Defendant then

28  provided her boyfriend with a sample of her hair so he could produce the hair with a

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

17                                                Case No. CR 20-35-JFW

DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO
PRESENCE INVESTIGATION REPORT

semen sample in it, directing federal agents to her boyfriend so he could provide it. *Id*.  In citing *Rodriguez*, the government focuses on the fact that the defendant made false statements on three occasions.  Obj. at p. 15.  But again, the government fails to mention the elaborate planning and preparation that went into corroborating those false statements—planning and preparation that does not exist here.

And in *United States v. Jensen,* 248 F. App'x 849 (10th Cir. 2007), defendant, a private prison employee, "enabled numerous [prison] residents to avoid testing positive for controlled substances," "neglected to record positive breath tests," and "enabled [prison] residents to violate institutional rules." *Id*. at 851.  The district court applied the otherwise extensive enhancement, finding the defendant's conduct to be so "extreme and repetitive" that "[t]he whole thing became known to every inmate in the place and any resident was aware of what was going on." *Id*.  The Court of Appeal affirmed, finding that defendant's conduct "prevented [prison] officials, and in turn the BOP, from learning that numerous [] inmates had used controlled substances or otherwise violated [prison] rules." *Id*.

As explained above, Mr. Englander made false statements during three installments of a single multi-session proffer, all of which were arranged and controlled by the government.  Before each session, and at the government's direction, the discovery indicates that Businessperson A reached out to Mr. Englander and/or arranged a meeting, which the FBI taped.  At each pre-proffer taped session, Businessperson A directed the conversation to the topics that were subsequently revisited in the proffer.  And while the multi-session proffer was dragged out over thirteen months (the government's timing), the false statements were not extensive in "scope, planning, or preparation."  Rather, they were all made in the same location (Los Angeles) to the same lead prosecutor and case agent, about the same topics.  The only "planning" or "preparation" was done by the government, which orchestrated the content and timing of the pre-session contacts between Businessperson A and Mr. Englander.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Case No. CR 20-35-JFW
DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO
PRESENTENCE INVESTIGATION REPORT

Attempting to cast Mr. Englander's conduct as more extensive than it was, the government suggests that the underlying events about which Mr. Englander made false statements—the Las Vegas trip and Morongo Casino charity event—involved multiple locations and multiple individuals. Obj. at p. 13. But Mr. Englander has not been charged with or convicted of any offense based on that conduct (which the government has never alleged constitutes a federal offense). Rather, Mr. Englander pled guilty to making false statements about those events, not to any crime in the events themselves.

**E.** **The Government's Alternate Guideline Analysis That Argues For An Obstruction of Justice Enhancement if the Court Applies the § 2B1.1 Guideline Also Fails**

The Government has a fallback argument. It argues that, if the Court determines that the appropriate guideline level is § 2B1.1, and not § 2J1.2, the Court should include an obstruction of justice enhancement under § 3C1.1 (as well as the abuse of trust enhancement discussed above).[9]  *See* Obj at. pp. 19-22.

The PSR concluded, however, that there was no information to conclude that Mr. Englander obstructed the investigation and no reason to apply the obstruction enhancement. PSR ¶ 48.

Recognizing that it cannot use the exact offense conduct that constitutes the underlying conviction (the false statements) to bootstrap an obstruction enhancement, the government attempts to stretch the offense conduct, writing that Mr. Englander "attempted to obstruct justice with respect to the instant investigation by repeatedly lying to law enforcement and attempting to tamper with a witness." Obj. at p. 20. And to support their argument, the government relies on *Dredd*, the case AUSA Dragalin prosecuted.

---

[9] The government's argument that the abuse of trust enhancement applies even if § 2B1.1 provides the base offense level fails for the same reasons it fails when applied to the § 2J1.2 guideline level. *See supra*, at pp. 11-15.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

19

Case No. CR 20-35-JFW

DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

1    The government's reliance on *Dredd* is misplaced.  In *Dredd,* discussed

2 above, the underlying offense, like here, was a "1001" false statement.  But unlike

3 this case, the *Dredd* defendant went to trial; he testified and lied on the stand.  *See*

4 *Dredd*, Case No. 2:15-CR-569-DSF (C.D. Cal.), Dkt. No. 311.  At sentencing, the

5 court applied the obstruction enhancement because of Mr. Dredd's perjurious

6 testimony, clearly separate conduct from the conduct on which he was tried.  In

7 affirming, the court noted that enhancing based on lies at trial is not double

8 counting.  *Dredd*, 2020 WL 6281513, at *2.  But allowing trial perjury to enhance

9 the guideline is hardly analogous to allowing the operative false statements to

10 enhance the operative false statements.  Unlike in *Dredd*, the obstruction

11 enhancement has no place here.

12 **IV.   <u>Conclusion</u>**

13    The PSR got it right: under the facts as set forth in the agreed stipulation of

14 facts, and the applicable law, the correct guidelines section is § 2B1.1, and the

15 adjusted guideline level is four (4).  The government's arguments otherwise each

16 miss the mark, for the reasons stated herein.

17

18 DATED:  January 11, 2021          KENDALL BRILL & KELLY LLP

19

20

21                         By:   /s/ Janet I. Levine

22                              Janet I. Levine
                              Attorneys for Defendant
23                              Mitchell Englander

24

25

26

27

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Case No. CR 20-35-JFW

DEFENDANT MITCHELL ENGLANDER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO
PRESENCE INVESTIGATION REPORT