KENDALL BRILL & KELLY LLP
Janet I. Levine (94255)
 *jlevine@kbkfirm.com*
Sarah E. Moses (291491)
 *smoses@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile:  310.556.2705

Attorneys for Defendant
Mitchell Englander

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 20-35-JFW |
| Plaintiff, | **DEFENDANT MITCHELL ENGLANDER'S REPLY TO THE GOVERNMENT'S SENTENCING POSITION** |
| v. | |
| MITCHELL ENGLANDER, | Judge:   John F. Walter |
| Defendant. | Date:    January 25, 2021 |
| | Time:    8:00 am |
| | Ctrm:    7A |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Case No. CR 20-35-JFW
DEFENDANT MITCHELL ENGLANDER'S REPLY TO THE GOVERNMENT'S SENTENCING POSITION

1    Defendant Mitchell Englander, by and through his counsel of record, hereby

2  submits the attached reply to the Government's Sentencing Position For Defendant

3  Mitchell Englander.

4

5  DATED:  January 19, 2021              KENDALL BRILL & KELLY LLP

6

7

8                                 By:    /s/ Janet I. Levine
                                         Janet I. Levine
9                                        Attorneys for Defendant
10                                       Mitchell Englander

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

2                                    Case No. CR 20-35-JFW
DEFENDANT MITCHELL ENGLANDER'S REPLY TO THE GOVERNMENT'S SENTENCING POSITION

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ....................................................................................... 1

II.     THE GOVERNMENT'S SENTENCING ARGUMENT ................................. 3

III.    THE GOVERNMENT'S SENTENCING POSITION IS SERIOUSLY
        FLAWED ................................................................................................... 4

        A.   Section 2B1.1 Applies to This 18 U.S.C. § 1001 False Statement
             Offense, Which Is A Generic Crime; Mr. Englander Seeks a
             Within-Guidelines Sentence ............................................................. 4

        B.   The Government's 24-Month Recommendation is Not Lenient,
             Despite Its Claim Otherwise ............................................................. 7

        C.   The Government Seeks to Punish Mr. Englander for Offenses It
             Did Not Charge and/or Did Not Pursue, Or For Conduct, While
             Not Criminal, It Just Disapproves Of ............................................... 8

        D.   The Government Bases Its Argument on Speculation and
             Assumption, Not Fact ..................................................................... 11

        E.   The Government's Analysis of the 18 U.S.C. § 3553(a) Factors
             Focuses on General Deterrence, Largely Ignoring the Other
             Factors ........................................................................................... 12

             1.   The Government's Deterrence Argument Relies on
                  Inapplicable Case Law and Speculation and Misstates
                  Facts ...................................................................................... 12

             2.   The Government Minimizes and Ignores Key § 3553(a)
                  Factors, Including Mr. Englander's History and
                  Characteristics, Protection of the Public, the Kinds of
                  Sentences Available, and the Need to Avoid Unwarranted
                  Sentencing Disparities ........................................................... 14

IV.     CONCLUSION ....................................................................................... 17

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*McDonnell v. United States*,
    136 S. Ct. 2355 (2016) ...................................................................................... 9

*United States v. Baca*,
    Case No. 16-CR-66-PA (C.D. Cal.) ............................................................... 5, 6

*United States v. Bistline*,
    665 F.3d 758 (6th Cir. 2012) ........................................................................... 12

*United States v. Dredd*,
    Case No. 15-CR-569-DSF (C.D. Cal.) ........................................................ 5, 6, 7

*United States v. Kuhlman*,
    711 F.3d 1321 (11th Cir. 2013) ....................................................................... 13

*United States v. Livesay*,
    587 F.3d 1274 (11th Cir. 2009) ....................................................................... 13

*United States v. Martin*,
    455 F.3d 1227 (11th Cir. 2006) ....................................................................... 13

*United States v. Prosperi*,
    686 F.3d 32 (1st Cir. 2012) ....................................................................... 13, 14

**Federal Statutes**

18 U.S.C. § 201 ...................................................................................................... 9

18 U.S.C. § 1001 ............................................................................................ *passim*

18 U.S.C. § 1512 ......................................................................................... 5, 9, 10

18 U.S.C. § 3553(a) ....................................................................................... *passim*

18 U.S.C. § 3553(a)(2)(C) .................................................................................. 15

18 U.S.C. § 3553(a)(2)(D) .................................................................................. 15

18 U.S.C. § 3553(a)(3) ........................................................................................ 15

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

ii

Case No. CR 20-35-JFW

DEFENDANT MITCHELL ENGLANDER'S REPLY TO THE GOVERNMENT'S SENTENCING POSITION

18 U.S.C. § 3553(a)(6) ........................................................................... 16

U.S.S.G. § 2B1.1 ............................................................................*passim*

U.S.S.G. § 2J1.2 ...........................................................................3, 4, 5, 9, 14

U.S.S.G. § 2J1.2(b)(3)(C) ...................................................................... 3

U.S.S.G. § 2J1.2(b)(1)(A) & (C) ........................................................... 5

U.S.S.G § 3B1.3 ..................................................................................... 3

**Federal Rules**

Fed. R. Crim. P. 11(c)(1)(C) .................................................................. 6

**Other Authorities**

Bureau of Justice Statistics, Federal Criminal Case Processing
   Statistics, *available at* https://www.bjs.gov/fjsrc/tsec.cfm .................................. 5

Federal Bureau of Prisons, COVID-19 Inmate Test Information,
   *available at* https://www.bop.gov/coronavirus/ .................................. 15

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

# I.   **INTRODUCTION**

The government offers a sentencing position wholly untethered from the facts of this case and the history and characteristics of Mr. Englander, and argues for a sentence completely out of line with the applicable guidelines and 18 U.S.C. § 3553(a) factors.  The government mislabels Mr. Englander as "privileged" and "wealthy," and suggests that he has been convicted of and/or should be sentenced for witness tampering and perhaps even some speculative, undefined, and uncommitted corruption.

But Mr. Englander fits none of these labels and has done none of these things, as the plea agreement, the Presentence Investigation Report ("PSR") and its addendum, and Mr. Englander's Position Regarding Sentencing shows.

Mr. Englander, in fact, is neither wealthy nor did he grow up privileged.  He grew up in a dysfunctional, largely single-parent home.  PSR, Dkt. No. 40 ¶¶ 67-69.  His mother and siblings relied on government assistance and local non-profit organizations for necessities.  *See* Englander's Redacted Position Regarding Sentencing, Dkt. No. 43 at p. 15.  He graduated from continuation high school while working as a night-shift janitor.  *Id*. at p. 18.[1]  Mr. Englander was a public servant

---

[1] The Letters of Support offered in support of Mr. Englander's Position Regarding Sentencing show that, as a young man, Mr. Englander gave up a financially lucrative career in campaign management so that he could take a position in public service and serve his community for many years.  Dkt. No. 43 at p. 32 & Support Letters, Ex. B-5.  He also worked for many years as a reserve police officer, for no compensation, only resigning from that position when this case was filed.  *Id*. at pp. 24-25.

The government discounts Mr. Englander's Support Letters, suggesting they come from a "cadre" of "long-time colleagues and/or constituents" who "seek to highlight their personal view of defendant's laudatory accomplishments."  Government's Sentencing Position, Dkt. No. 49 at p. 22.  The government's brief makes no substantive comment on the content of the letters and its characterization of the letters is wrong.  Mr. Englander's supporters come from all walks of life, and their relationships with Mr. Englander span from early childhood to present day.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

DEFENDANT MITCHELL ENGLANDER'S REPLY TO THE GOVERNMENT'S SENTENCING POSITION

for most of his adult life leaving public service about two years ago to enter the private sector, eventually starting his own consulting business,[2] which has been decimated since the felony charges in this case.  PSR, Dkt. No. 40 ¶¶ 90, 92, 93. And as the plea agreement drafted by the government and its supporting factual basis make clear, he pled guilty here to making false statements, not witness tampering or to an entirely imagined and speculative public corruption offense.

Under these facts, as set forth in Mr. Englander's Position Regarding Sentencing and his Response to the Government's Objections to the PSR, Mr. Englander's false statement offense is properly analyzed under U.S.S.G. § 2B1.1, which provides a base offense level of six.  The parties did not "stipulate" to any greater offense and none of the government's urged enhancements apply.  *See* Englander's Response to Government's Objections to the PSR, Dkt. No. 48 at pp. 8-19.  Taking into account Mr. Englander's acceptance of responsibility, the adjusted offense level is four, which given Mr. Englander's lack of criminal history, yields a guidelines range of 0 to 6 months imprisonment.  PSR, Dkt. No. 40 ¶ 103.  Mr.

_____

They include childhood friends and mentors, fellow reserve police officers and supervisors, and colleagues who have long since left public service—none of whom have any self-interest in supporting Mr. Englander.  They discuss specific incidents, such as Mr. Englander's selfless service at the scene of a deadly train crash that killed 25 people, or his focused dedication to enlarging hospital capacity and facilities for at-risk youth.  The letters make the presentation necessary for this Court to exercise its judgment in applying the § 3553(a) factors.  The government's flippant rejection of the letters does not aid that exercise of judgment.

[2] The government, perhaps to detract from Mr. Englander's long history of public service and volunteer work, highlights that in 2019, after devoting most of his adult life to public service, Mr. Englander left City Council and entered the private sphere.  Government's Sentencing Position, Dkt. No. 49 at pp. 1, 19.  But there is nothing wrong with leaving public service for a for-profit endeavor.  People regularly come and go from public service.  *See, e.g., U.S. Attorney Nick Hanna Returns to Gibson Dunn*, Jan. 11. 2021, *available at* https://bit.ly/3qjUusI.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Case No. CR 20-35-JFW

DEFENDANT MITCHELL ENGLANDER'S REPLY TO THE GOVERNMENT'S SENTENCING POSITION

1   Englander seeks probation—the sentence recommended by the PSR and which is

2   within the guidelines range.  Given all the § 3553(a) factors, as is detailed in his

3   Position Regarding Sentencing, Mr. Englander submits that a probation sentence is

4   the just and appropriate sentence.[3]

5   **II.      THE GOVERNMENT'S SENTENCING ARGUMENT**

6          The government's argument (which is baseless), essentially, is that this case is

7   not a false statement case, but rather a witness tampering case, overlaid with

8   speculation about some potential unspecified bribery that could have occurred, and

9   thus it should be governed by U.S.S.G. § 2J1.2.  The government also argues that at

10  least two "two-level" enhancements apply, abuse of trust (U.S.S.G § 3B1.3) and

11  conduct extensive in scope (U.S.S.G. § 2J1.2(b)(3)(C)), which, taking into account

12  Mr. Englander's acceptance of responsibility and lack of any criminal history, yields

13  an adjusted offense level of 15 and a guidelines sentencing range of 18 to 24

14  months.  (These arguments are fully addressed and debunked in Mr. Englander's

15  Response to the Government's Objections to the PSR (Dkt. No. 48) and the United

16  States Probation Office's ("USPO") Addendum to the PSR (Dkt. No. 57).)  And the

17  government argues that a high-end sentence (24 months) within this guideline is

18  appropriate, because despite the fact that Mr. Englander has led an exemplary life,

19  accepted responsibility early, is not a danger (as his stipulated bond reveals), and

20  has never before violated the law, probation is not appropriate because white-collar

21  offenders in general get away all too easy, government corruption is causing

22  mistrust of government, and a "lenient" sentence would embolden future criminals.

23  *See* Government's Sentencing Position, Dkt. No. 49 at pp. 10, 15-16.  Finally, the

24

25  _____

26          [3] On January 15, 2021, the United States Probation Office ("USPO") filed an
    addendum to its Presentence Investigation Report (Dkt. No. 57), which analyzed and
27  rejected the government's objections to the PSR.  The USPO maintains its original
    sentencing recommendation of probation and a fine.
28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

3                                      Case No. CR 20-35-JFW
DEFENDANT MITCHELL ENGLANDER'S REPLY TO THE GOVERNMENT'S SENTENCING POSITION

1    government incredibly argues that Mr. Englander, who is seeking a guideline

2    sentence, is in fact seeking special treatment.

3         The Government's guideline analysis has been twice rejected by the probation

4    department in its PSR (Dkt. No. 40) and its addendum (Dkt. No. 57).  As set forth in

5    Mr. Englander's Position Regarding Sentencing (Redacted, Dkt. No. 43; Sealed,

6    Dkt. No. 51), Response to the Government's Objections to the PSR (Dkt. No. 48),

7    and herein, the government's guideline analysis, the cases it cites, and the narrative

8    it tries to advance, fail.  Mr. Englander should be sentenced to probation.

9    **III.    THE GOVERNMENT'S SENTENCING POSITION IS SERIOUSLY**

10           **FLAWED**

11        **A.    Section 2B1.1 Applies to This 18 U.S.C. § 1001 False Statement**

12               **Offense, Which Is A Generic Crime; Mr. Englander Seeks a**

13               **Within-Guidelines Sentence**

14        Despite the government's attempt to characterize the crime here as a "white-

15   collar" crime (*see* Government's Sentencing Position, Dkt. No. 49 at pp. 8-10, 13-

16   16), 18 U.S.C. § 1001 false statement violations are not "white-collar" crimes; rather

17   § 1001 is a generic criminal statute that punishes false statements about both white-

18   collar crimes and blue-collar crimes, and false statements within the jurisdiction of

19   the government that are not about federal crimes at all, such as here.  Even a cursory

20   review of the annotations on Westlaw under 18 U.S.C. § 1001 shows that "1001"

21   violations involve false statements on myriad subjects.

22        And Mr. Englander, contrary to the government's argument, is not seeking

23   some sort of white-collar offender special treatment.  As set forth in Mr.

24   Englander's Redacted Position Regarding Sentencing (Dkt. No. 43 at pp. 5-8) and

25   Response to the Government's Objections to the PSR (Dkt. No. 48 at pp. 6-8), and

26   in the PSR (Dkt. No. 40 ¶ 41), U.S.S.G. § 2B1.1 applies to most § 1001 violations.

27   Section 2J1.2, the guideline the government urges the Court to apply here, only

28   applies to § 1001 violations when the specific offense has a statutory maximum of

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

eight years because it relates to sex crimes or terrorism.  U.S.S.G § 2J1.2(b)(1)(A) & (C).  But that is clearly not the case here.  Nor has Mr. Englander stipulated to a set of facts proving all the elements of the higher offense the government urges, 18 U.S.C. § 1512.  As explained in Mr. Englander's Response to the Government's Objections to the PSR (Dkt. No. 48 at pp. 3, 8-11), the plea agreement and its factual basis do not establish all of the elements of such a violation.

Mr. Englander is not asking for special treatment as a wealthy, privileged, white-collar defendant.  Rather, he is asking for equal treatment under the same set of guidelines applicable to all who violate § 1001.  *See* Bureau of Justice Statistics, Federal Criminal Case Processing Statistics, *available at* https://www.bjs.gov/fjsrc/tsec.cfm (showing that from 2014-2016, the most recent years for which data is available, a clear majority of defendants convicted of "1001" violations received probation sentences).[4]

The government inexplicably relies on two Central District of California cases, *United States v. Baca*, Case No. 16-CR-66-PA (C.D. Cal.) and *United States v. Dredd,* Case No. 15-CR-569-DSF (C.D. Cal.), to support its suggested 24-month sentence here, referencing these cases as examples of sentences actually imposed on public officials in this District.  *See* Government's Sentencing Position, Dkt. No. 49

---

[4] On page 24 of its brief, the government cites to the average prison sentence for defendants sentenced under U.S.S.G. § 2J1.2, which does not apply here.  The government also cites to the average prison sentence imposed for all violations to which U.S.S.G. § 2B1.1 applies, suggesting that the statistic it cites establishes that the average sentence for the crime charged here is a term of imprisonment.  But as the government should know, that statistic includes ***all*** fraud cases sentenced under § 2B1.1, which includes financial crimes such as Ponzi schemes, procurement fraud, wire and mail fraud, and health care fraud.  The appropriate statistic, notably ignored by the government, but presented in Mr. Englander's Redacted Position Regarding Sentencing, is that of "1001" violations.  That statistic shows that most "1001" violations are sentenced to straight probation.  Dkt. No. 43 at p. 35, n.29.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

at p. 25, n.8.  But these cases in fact establish that Mr. Englander's position and that of the PSR as to the applicability of § 2B1.1 are correct.

*Dredd* is discussed at length in Mr. Englander's Response to the Government's Objections to the PSR.  Dkt. No. 48 at pp. 6-8, 19-20.  Both the *Dredd* and *Baca* cases ended ***after trials in which the defendants were convicted***. Neither case was resolved by a guilty plea.  Both cases arise from a series of cases involving false statements, obstruction, various misconduct in the county jail, and a related cover-up involving many in the Los Angeles County Sheriff's Office.

In the first case, involving Sheriff Baca, the United States Attorney's Office made a binding Federal Rule of Criminal Procedure 11(c)(1)(C) plea offer to Baca, under which Baca would plead guilty to a false statement and he would receive a sentence from probation to six months in custody.  The Baca plea agreement set forth that § 2B1.1 applied to Baca's false statement offense, with a base offense level of six.  *Baca*, Case No. 16-CR-66-PA (C.D. Cal.), Dkt. No. 5.  The binding plea agreement limited the sentencing Court's ability to sentence Baca above six months.  The offer was made by now Chief of the Criminal Division Brandon Fox, who was at the time the head of the Public Corruption section.  It was accepted by Baca and Baca entered a guilty plea.  When it came time to sentence, the USAO urged the Court in writing to accept the plea agreement, but the Court refused.  *Id.* at Dkt. No. 62.  Given the Court's refusal to accept the binding plea, the guilty plea was withdrawn, and ***Baca went to trial***.  He was convicted, after trial, of the ***more serious crimes of obstruction of justice*** and conspiracy to obstruct justice.  Using the obstruction base offense level and proven-at-trial enhancements, including organizer-leader, the Court sentenced Baca to 36 months.

While the government tries to analogize the instant case to the eventual sentence that Baca received, such analogy is clearly unjustified.  Baca was convicted of obstruction and conspiracy to obstruct, as well as a false statement.  His post-trial guidelines were enhanced four levels as he was an organizer-leader.  His base

1  offense level after trial, for obstruction, was higher than the § 2B1.1 offense level

2  for false statements (the original, binding plea offer).  And he did not receive a

3  reduction for acceptance of responsibility.

4          A much more apt comparison is to *United States v. Dredd*.  Dredd was

5  convicted of a false statement offense after trial.  There the government urged, and

6  the Court found, that the false statement offense had a base offense level of 6.

7  *Dredd,* Case No. 15-CR-569-DSF (C.D. Cal.), Dkt. No. 311.  Dredd was sentenced

8  to 12 months in custody because he lied at trial and did not accept responsibility, so

9  his adjusted guideline level was higher than Mr. Englander's, who did not go to trial

10 and did accept responsibility.  *Dredd* clearly shows that the base offense level here

11 is § 2B1.1.

12      **B.      The Government's 24-Month Recommendation is Not Lenient,**

13              **Despite Its Claim Otherwise**

14         Ignoring the limits of the plea agreement and the factual basis it drafted and

15 executed, the government asks this Court to circumvent that agreement and sentence

16 Mr. Englander based on verbiage in the indictment it did not pursue to conviction

17 and the creative parade of possible horribles first appearing in its sentencing position

18 paper.  In making this argument, the government suggests a sentencing guideline

19 range of 18 to 24 months and urges the Court to sentence at the top of this range (a

20 guideline range the PSR and Mr. Englander establish is not justified).

21         The government argues that in recommending 24 months, it is rewarding Mr.

22 Englander with a lenient recommendation because he promptly pled guilty.  *See*

23 Government's Sentencing Position, Dkt. No. 49 at p. 23.  But the government's 24-

24 month high-end custody recommendation is not lenient, and, as set forth in Mr.

25 Englander's previously filed papers, is not justified in any way.

26         The government's unusual suggestion that its requested 24-month sentence is

27 lenient because the appellate waiver in the parties' plea agreement does not kick in

28 unless a higher sentence (36 months) is imposed makes no sense.  (The government

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

7                                    Case No. CR 20-35-JFW
DEFENDANT MITCHELL ENGLANDER'S REPLY TO THE GOVERNMENT'S SENTENCING POSITION

1  also suggests, contrary to the plea agreement, that it could have requested a 60-

2  month sentence here.)[5]  But agreeing to an appellate waiver or a sentencing range

3  does not imply agreement to a particular sentence nor does it indicate that a sentence

4  below the appellate waiver is lenient.  And no one can rationally suggest that Mr.

5  Englander agreed that 36 months was a reasonable sentence here (which it clearly is

6  not, given the 0 to 6 month guideline range) any more than one could suggest that

7  the government agreed that probation was the reasonable sentence because the

8  government agreed that Mr. Englander could request probation.  Thirty-six months

9  is merely the highest custodial sentence the government could seek under the plea

10 agreement and where the appellate waiver evaporates.  *See* Plea Agreement. Dkt.

11 No. 24 ¶¶ 3(e), 14.  Indeed, the 36-month limit on the government's potential

12 sentence request applied in any circumstance; for example, if Mr. Englander had a

13 long criminal history or if he was disrespectful to the Court—and it applied without

14 consideration of any § 3553(a) or mitigating factors.  To use the outer bounds of a

15 sentencing range to suggest that any sentence below the outer bound is lenient is an

16 argument undeserving of serious consideration.

17     **C.     <u>The Government Seeks to Punish Mr. Englander for Offenses It</u>**

18          **<u>Did Not Charge and/or Did Not Pursue, Or For Conduct, While</u>**

19          **<u>Not Criminal, It Just Disapproves Of</u>**

20     The government argues that this case is "borne from corruption," effectively

21 trying to morph this false statement case into a bribery case.  Government's

22 Sentencing Position, Dkt. No. 49 at p. 10.  In doing so, the government attempts to

23

24 _____

25     [5] The government misstates that the parties' plea agreement "allows the
government to recommend a sentence up to 60 months' custody."  Dkt. No. 49 at p.

26 23, n.7.  That is false.  The plea agreement, in fact, prohibits the government from
seeking a sentence of more than 36 months' imprisonment.  Plea Agreement, Dkt.

27 No. 24, ¶ 3(e) (the USAO agrees to "[n]ot seek a sentence of imprisonment above

28 36 months…").

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

8                                              Case No. CR 20-35-JFW
DEFENDANT MITCHELL ENGLANDER'S REPLY TO THE GOVERNMENT'S SENTENCING POSITION

muddy the waters between this straight-forward false statement plea agreed to by the parties here and the government's broader public corruption probe into City Council bribery schemes. But federal bribery is not some elusive concept; it is a specific offense with specific elements that must be met. *See* 18 U.S.C. § 201; *McDonnell v. United States*, 136 S. Ct. 2355, 2371-72 (2016); Englander Redacted Position Regarding Sentencing, Dkt. No. 43 at p. 6, n.7; Englander Response to Government's Objections to the PSR, Dkt. No. 48 at p. 13.

Despite the government's rhetoric, those elements are not met here. There is no bribe, no "pay-to-play," and no "quid pro quo."[6] There is not even an "official act" or an agreement to perform an "official act." If the government was able to prove any such conduct, it should have charged and pursued it. *See* Englander Response to Government's Objections to the PSR, Dkt. No. 48 at pp. 5-6 (under existing DOJ policy, the government is required to "charge and pursue the most serious, readily provable offense," *i.e.*, the offense with the "most substantial guideline sentence . . . .") It did not do so and it cannot erase that failure by forceful but ultimately empty rhetoric.

The same goes for the government's attempt to apply U.S.S.G. § 2J1.2 to Mr. Englander. While Mr. Englander was indicted on both § 1001 and § 1512 violations, the more serious § 1512 violations were dropped in the parties' plea agreement, with Mr. Englander pleading guilty to one count of making false statements under § 1001. The plea agreement, which contains a detailed factual basis carefully negotiated by the parties, does not contain the words "obstruction" or

---

[6] Despite the government's unwarranted implication in its footnote 6 (Government's Sentencing Position, Dkt. No. 49 at p. 13, n.6), Mr. Englander is not charged in Mr. Huizar's bribery case or involved in that case—not as a defendant and not as a witness. Had the government had any evidence to tie Mr. Englander to its omnibus bribery case, it would have done so. This type of prosecutorial overreach—culpability by innuendo—is not justifiable or acceptable.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

9                                        Case No. CR 20-35-JFW
DEFENDANT MITCHELL ENGLANDER'S REPLY TO THE GOVERNMENT'S SENTENCING POSITION

1  "witness tampering" or the facts necessary to establish the elements of these

2  offenses.  And the government's claim that it included "essentially all" the

3  necessary language (Government's Sentencing Position, Dkt. No. 49 at p. 2) does

4  not satisfy the requirement to include *all* the necessary language.  "Essentially all" is

5  not all.

6       As set forth in Mr. Englander's Response to the Government's Objections to

7  the PSR (Dkt. No. 48 at pp. 8-11), the government has not shown any underlying

8  "federal offense," as required under § 1512(b)(3).[7]  The government's speculation

9  about what "could have been" does not fill that void.

10       Recognizing this fatal flaw in its argument to support its urged guideline, and

11  the lack of any substance to support its suggested sentence, the government tries to

12  substitute an undefined "breach" of "duty and oath" based on Mr. Englander's prior

13  positions as a public official and a reserve police officer for the actual federal

14  offense required under § 1512.  Government's Sentencing Position, Dkt. No. 49 at p.

15  3.

16       Every citizen—public official or not—has an obligation and duty to be

17  truthful in interviews with the government.  Section 1001 punishes all such conduct.

18  This case is not about the violation of an oath or even a violation of duty—it is

19  about the false statement to which Mr. Englander pled guilty and accepted

20  responsibility.  And violating an oath or duty does not transform a false statement

21

22

23       [7] The government states that Mr. Englander left public office before the end

24  of his last term, insinuating that his departure had something to do with this

25  investigation.  Government's Sentencing Position, Dkt. No. 49 at p. 1.  But as just

   the timing shows, the government's attempt to link these events is yet another

26  speculative leap.  At the time Mr. Englander announced in October 2018 that he was

27  leaving his position on December 31, 2018, he had not heard from the government

   since his interview with them in early February of that year, three quarters of a year

28  earlier.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Case No. CR 20-35-JFW

DEFENDANT MITCHELL ENGLANDER'S REPLY TO THE GOVERNMENT'S SENTENCING POSITION

1   offense into witness tampering.  *See generally* PSR, Dkt. No. 40 ¶ 46; Englander's

2   Response to Government's Objections to the PSR, Dkt. No. 48 at pp. 11-15.

3   **D.      The Government Bases Its Argument on Speculation and**

4   **Assumption, Not Fact**

5   To ask for a 24-month sentence and paint Mr. Englander as something he is

6   not, the government makes a number of baseless assumptions, drawing conclusions

7   without facts and speculating without basis.  For example, the government argues

8   that "[o]ne would certainly have to question" whether the gambling money Mr.

9   Englander accepted from Businessperson A "***could***, in return, leave the recipient

10  vulnerable to distasteful requests or demands in the future."  Government's

11  Sentencing Position, Dkt. No. 49 at pp. 3-4 (emphasis added).  It assumes and

12  argues that Mr. Englander "***opened himself up*** to improper influence and ***potential***

13  blackmail" in what was "the ***start*** of a concerning and predictable relationship."  *Id*.

14  at p. 4 (emphasis added).  It concludes, without basis, that the relationship "likely

15  ***would have blossomed*** into federal bribery . . ."  *Id*.  (emphasis added).

16  But there is no such evidence; after a comprehensive investigation of Mr.

17  Englander and his finances, and interviews with friends, colleagues, and business

18  acquaintances, discovery shows that the government developed no evidence of any

19  bribery scheme.  And its baseless speculation about the potential for a crime to

20  maybe perhaps occur in the future is not worthy of consideration here and is not the

21  substance on which to base a sentencing decision.

22

23

24

25

26

27

28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Case No. CR 20-35-JFW

DEFENDANT MITCHELL ENGLANDER'S REPLY TO THE GOVERNMENT'S SENTENCING POSITION

E.    **The Government's Analysis of the 18 U.S.C. § 3553(a) Factors Focuses on General Deterrence, Largely Ignoring the Other Factors**

  1.    **The Government's Deterrence Argument Relies on Inapplicable Case Law and Speculation and Misstates Facts**

The government focuses almost entirely on deterrence, largely ignoring other factors under 18 U.S.C. § 3553(a).[8]  Government's Sentencing Position, Dkt. No. 49 at pp. 15-16.  In making deterrence virtually its only focus, the government impermissibly focuses on just one of the § 3553(a) factors.  This is not allowed, as the government itself acknowledges when it unjustly criticizes the PSR.  *Id.* at pp. 9-10 (citing *United States v. Bragg,* 582 F.3d 965, 969 (9th Cir. 2009)).

The government's deterrence argument begins with a citation to a very dated, nearly four-decades-old 1983 Congressional report referencing white-collar crime that pre-dates the sentencing guidelines.  *See* Government's Sentencing Position, Dkt. No. 49 at pp. 14-16, 18.  The government then cites several cases to support its less-than-relevant but media-pleasing claim that white-collar defendants get off too easily.  But any reading of these unusual cases it cites shows that each has no application here.  In fact, many involve enormous departures from the guideline range—something Mr. Englander is not seeking.  For instance:

- In *United States v. Bistline,* 665 F.3d 758, 760 (6th Cir. 2012), cited by the government for the proposition that "criminals with privileged backgrounds are [no] more entitled to leniency than those who have nothing left to lose" (Government's Sentencing Position, Dkt. No. 49 at p. 20, citing *Bistline*, 665 F.3d at 765-66), the defendant pled guilty to possession of 305 images and 56

---

    [8] The government accuses the PSR of just focusing on a couple of § 3553(a) factors (Government's Sentencing Position, Dkt. No. 49 at pp. 8-10), which the PSR clearly does not.  The PSR evaluates the full range of § 3553(a) factors.  *See* USPO Sentencing Recommendation Letter, Dkt. No. 39 at pp. 1-5.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

12                                          Case No. CR 20-35-JFW
DEFENDANT MITCHELL ENGLANDER'S REPLY TO THE GOVERNMENT'S SENTENCING POSITION

videos of child pornography, many of which showed 8-10-year-old girls being raped by adult men.  The guidelines sentence was 63 to 78 months' imprisonment.  The district court sentenced defendant to a single day of confinement in courthouse lock up (presumably his booking day).

- In *United States v. Kuhlman*, 711 F.3d 1321, 1325-26 (11th Cir. 2013), cited by the government for the proposition that non-custodial sentences do not serve the goal of general deterrence (Government's Sentencing Position, Dkt. No. 49 at p. 16), the defendant engaged in a five-year, $3 million health care fraud scheme.  His total offense level was 25, with a guideline range of 57 to 71 months' imprisonment.  The district court varied downward 20 levels, imposing a sentence with no custodial time.

- In *United States v. Livesay*, 587 F.3d 1274, 1277-79 (11th Cir. 2009), cited by the government for the proposition that the threat of probation does not provide the same level of deterrence as the threat of incarceration (Government's Sentencing Position, Dkt. No. 49 at p. 16), the defendant engaged in a "massive" accounting fraud that "bilked" over a billion dollars from company shareholders.  The guidelines range was 78 to 97 months' imprisonment.  The court departed substantially downward and imposed a term of 5 years' probation.

- In *United States v. Martin*, 455 F.3d 1227, 1230-31 (11th Cir. 2006), cited by the government for the proposition that general deterrence is particularly effective in sentencing white-collar crimes "because white collar criminals often premeditate their crimes and engage in a cost-benefit analysis" (Government's Sentencing Position, Dkt. No. 49 at p. 15), defendant engaged in a "massive and prolonged" securities fraud conspiracy.  His guidelines range was 108 to 135 months' imprisonment.  The district court varied downward 23 levels, sentencing him to seven days imprisonment.

- In *United States v. Prosperi,* 686 F.3d 32, 34 (1st Cir. 2012), cited by the

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Case No. CR 20-35-JFW
DEFENDANT MITCHELL ENGLANDER'S REPLY TO THE GOVERNMENT'S SENTENCING POSITION

1   government for the proposition that courts should not "impose a lighter

2   sentence on white-collar defendants than on blue-collar defendants because it

3   reasons that white-collar offenders suffer greater reputational harm or have

4   more to lose by conviction" (Government's Sentencing Position, Dkt. No. 49

5   at p. 20, citing *Prosperi,* 686 F.3d at 47), defendants were convicted of mail

6   fraud, highway project fraud, and conspiracy to defraud the government.  The

7   guidelines sentencing range was 87 to 108 months' incarceration.  They

8   received 6 months of home monitoring, 3 years' probation and community

9   service, which the court of appeals in fact affirmed.  *Id*. at 34, 49-50.

10       These cases do not apply here where Mr. Englander is not asking for a

11   departure from the guidelines range at all, let alone one of the magnitude the

12   government's cases address.  Instead, Mr. Englander is asking, consistent with the

13   PSR and its addendum, for a sentence of probation, which is within the properly-

14   applied guideline range of 0 to 6 months and is plainly justified by the § 3553(a)

15   factors.[9]

16              **2.      The Government Minimizes and Ignores Key § 3553(a)**

17                       **Factors, Including Mr. Englander's History and**

18                       **Characteristics, Protection of the Public, the Kinds of**

19                       **Sentences Available, and the Need to Avoid Unwarranted**

20                       **Sentencing Disparities**

21       In addition to mischaracterizing the "nature and circumstances" of Mr.

22   Englander's § 1001 violation as a witness tampering and bribery offense when it

23   plainly is not, the government also ignores a number of § 3553(a) factors.  Mr.

24   Englander's "history and characteristics," set forth in detail in Mr. Englander's

25   _____

26       [9] If the Court determines that § 2J1.2 applies here, Mr. Englander requests a
   small variance downward to allow for probation—nothing like the huge variances

27   sought in the cases cited by the government.  Englander's Redacted Position
   Regarding Sentencing, Dkt. No. 43 at p. 9, n.10.

28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  Position Regarding Sentencing (Redacted, Dkt. No. 43; Sealed, Dkt. No. 51), are

2  glossed over in a single sentence and then discounted by another reference to Mr.

3  Englander "parlay[ing]" his public sector work into a "lucrative career in private

4  practice."  Government's Position Regarding Sentencing, Dkt. No. 49 at p. 19.  The

5  government's analysis barely acknowledges Mr. Englander's tremendous childhood

6  struggles, his nearly two decades of public service, his years of service as a reserve

7  police officer, and his enduring focus on charity and family.

8      Nor does the government even attempt to explain how a custodial sentence

9  here will "protect the public from further crimes of the defendant" under 18 U.S.C.

10  § 3553(a)(2)(C).  The government entirely ignores Mr. Englander's dedication to

11  law enforcement during his over ten years as an LAPD reserve police officer

12  (regularly putting his life at risk for the good of the people) and the USPO's

13  conclusion that "[t]he instant offense notwithstanding, much of [Mr.] Englander's

14  life has evidenced great respect for the law."  USPO Sentencing Recommendation

15  Letter, Dkt. No. 39 at p. 3.

16      And glaringly absent from the government's argument is any mention of the

17  "kinds of sentences available" given the worldwide pandemic currently gripping Los

18  Angeles, and custodial settings,[10] in particular.  Courts in this District and across the

19  country have considered the effects of the pandemic in making sentencing decisions

20  for nearly a year, and if the Court is considering a custodial sentence here, those

21  risks must be considered.  As noted in Mr. Englander's Sealed Position Regarding

22  Sentencing (Dkt. No. 51 at p. 37, n.31), Mr. Englander has relevant medical

23  conditions that necessarily impact any sentencing analysis.  *See* 18 U.S.C. §

24  3553(a)(2)(D) & (a)(3) (requiring a court to consider "the kinds of sentences

25  available" when sentencing a defendant and to impose a sentence that provides the

26

27      [10] *See* Federal Bureau of Prisons, COVID-19 Inmate Test Information,
   *available at* https://www.bop.gov/coronavirus/.

28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

15                                    Case No. CR 20-35-JFW
DEFENDANT MITCHELL ENGLANDER'S REPLY TO THE GOVERNMENT'S SENTENCING POSITION

1  defendant with medical care "in the most effective manner").  And also absent is

2  any recognition that a felony conviction and probation are substantial sentences, and

3  involve real punishment.  *See* Englander's Redacted Position Regarding Sentencing,

4  Dkt. No. 43 at pp. 35-36.

5        Finally, the government urges a custodial term (which is way outside the

6  guidelines), citing the need to avoid sentencing disparities under § 3553(a)(6).  But it

7  is the government that is requesting the disparate, aberrant sentence.

8        The USPO's Sentencing Recommendation Letter concludes that a custody

9  sentence "would be aberrant for other defendants facing a similar guideline range

10  with a background like [Mr.] Englander's" (Dkt. No. 39 at p. 3), which the Bureau

11  of Justice Statistics confirms.  *See supra*, at p. 5.  The USPO explains the basis for

12  this conclusion: Mr. Englander is a "non-violent, first time offender with a long

13  history of compliant behavior."  PSR, Dkt. No. 39 at p. 3.  And the guideline range

14  for the offense is 0 to 6 months.  This conclusion and its reasoning may not fit with

15  the government's narrative, but it is accurate, as the facts set forth in the PSR show.

16  A probation sentence, as recommended in the PSR, will avoid the "unwarranted

17  sentence disparities" the government warns against.

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

16

Case No. CR 20-35-JFW
DEFENDANT MITCHELL ENGLANDER'S REPLY TO THE GOVERNMENT'S SENTENCING POSITION

## IV.    <u>CONCLUSION</u>

There is no doubt that the general public has lost trust in civic institutions. One need look no further than the recent events at the United States Capitol to see just how much has been lost.  But the government cannot lay this erosion at Mr. Englander's feet, as it has clearly attempted to do here.

Mr. Englander stands convicted of a single false statement § 1001 violation. He accepted responsibility.  The Court should sentence Mr. Englander for the crime to which he has entered his guilty plea, considering the guidelines and the § 3553(a) factors.  It is respectfully submitted that due consideration of the appropriate guidelines and § 3553(a) factors compels a probation sentence.

DATED:  January 19, 2021                 KENDALL BRILL & KELLY LLP


By:   _____/s/ Janet I. Levine_____
          Janet I. Levine
          Attorneys for Defendant
          Mitchell Englander

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

17                                          Case No. CR 20-35-JFW

DEFENDANT MITCHELL ENGLANDER'S REPLY TO THE GOVERNMENT'S SENTENCING POSITION